**KEMP JONES, LLP**
Nathanael R. Rulis, Esq.
Nevada Bar No. 11259
Francesca M. Bergeret-Simpson, Esq.
Nevada Bar No. 16499
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169
T: 702.385.6000 | F: 702.385.6001
n.rulis@kempjones.com
f.bergeret-simpson@kempjones.com
*Attorneys for Capital Bank, N.A.*
*formerly known as West Town Bank & Trust*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WEST TOWN BANK & TRUST,<br><br>Plaintiff,<br><br>v.<br><br>PARAM KAUR,<br><br>Defendant. | Case No. 2:25-ms-00015<br><br>**EX PARTE MOTION FOR CHARGING ORDER** |

Judgment Creditor Capital Bank N.A., formerly West Town Bank & Trust ("Judgment Creditor"), by and through its attorney, Kemp Jones, LLP, hereby files this Ex Parte Motion for Charging Order. This Motion is made and based upon the attached Memorandum of Points and Authorities and all pleadings and papers on file herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Judgment Creditor seeks a Charging Order against Judgment Debtor Param Kaur ("Judgment Debtor" or "Kaur") and her distributions from Charm Hospitality, LLC ("Charm") a Nevada Limited Liability Company. The Charging Order should specify that Judgment Creditor receives any and all Judgment Debtor's distributions from Charm from the date of entry of the charging order until the Judgment is satisfied in full. A proposed Charging Order is attached

KEMP JONES, LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

KEMP JONES, LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

hereto as **Exhibit 1**.

## II.

## PROCEDURAL HISTORY

On May 9, 2022, a Final Judgment in the amount of $8,205,562.89 plus post-judgment interest was entered in favor of Judgment Creditor and against Judgment Debtor Param Kaur in the United States District Court for the Eastern District of Texas in Case Number 4:21-CV-00257. *See* Certified Judgment, attached hereto as **Exhibit 2**. On March 25, 2025, the Judgment was registered in the United States District Court of Nevada. [ECF #1]. On April 28, 2025, Judgment Creditor filed an Affidavit and Request for Issuance of a Writ of Execution. [ECF #2]. The Clerk of Court issued the Writ of Execution on August 13, 2025. [ECF #3].

Judgment Debtor holds a membership interest in Charm Hospitality, LLC ("Charm") a Nevada Limited Liability Company. *See* Nevada Secretary of State information sheet attached hereto as **Exhibit 3.** Judgment Debtor is currently the sole member of Charm. *See* Complaint in Case No. 2:25-cv-00282, attached hereto as **Exhibit 4**; Certificate of Interested Parties in Case No. 2:25-cv-00282, attached hereto as **Exhibit 5**.

## III.

## LEGAL ARGUMENT

Federal Rule of Civil Procedure 69(a) provides that "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies. Nevada law provides the relevant procedure for the issuance of a Charging Order against a member's interest in a Limited Liability Company. NRS 86.401 provides, in pertinent part, as follows:

> **Rights and remedies of creditor of member.**
>
> 1. On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the member's interest with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the member's interest.
>
> 2. This section:

KEMP JONES, LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

(a) Provides the exclusive remedy by which a judgment creditor of a member or an assignee of a member may satisfy a judgment out of the member's interest of the judgment debtor, whether the limited liability company has one member or more than one member. No other remedy, including, without limitation, foreclosure on the member's interest or a court order for directions, accounts and inquiries that the debtor or member might have made, is available to the judgment creditor attempting to satisfy the judgment out of the judgment debtor's interest in the limited liability company, and no other remedy may be ordered by a court.

(b) Does not deprive any member of the benefit of any exemption applicable to his or her interest.

As set forth in NRS 86.401(1), Judgment Creditor is entitled to a "Charging Order" allowing Judgment Creditor the right of an assignee of the member's interest in the limited liability company. Judgment Creditor prays for such an Order now, placing it in the position of "assignee" of the Judgment Debtor's distributions from Charm, until the Judgment is satisfied in full.

**IV.**

**CONCLUSION**

Based upon the foregoing, Judgment Creditor prays for the Charging Order as set forth above.

DATED this 5th day of September, 2025.

*By /s/ Nathanael R. Rulis*
Nathanael R. Rulis, Esq. (#11259)
Francesca M. Bergeret-Simpson, Esq. (#16499)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

*Attorneys for Capital Bank, N.A. formerly known as West Town Bank & Trust*

KEMP JONES, LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2025, **EX PARTE MOTION FOR CHARGING ORDER** was filed using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Ali Lott*
An Employee of Kemp Jones, LLP

# EXHIBIT 1

Proposed Charging Order

**KEMP JONES, LLP**
Nathanael R. Rulis, Esq.
Nevada Bar No. 11259
Francesca M. Bergeret-Simpson, Esq.
Nevada Bar No. 16499
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169
T: 702.385.6000 | F: 702.385.6001
n.rulis@kempjones.com
f.bergeret-simpson@kempjones.com
*Attorneys for Capital Bank, N.A.*
*formerly known as West Town Bank & Trust*

KEMP JONES, LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WEST TOWN BANK & TRUST,

Plaintiff,

v.

PARAM KAUR,

Defendants.

Case No. 2:25-ms-00015

**CHARGING ORDER**

Upon the Ex Parte Motion for Charging Order filed by Judgment Creditor Capital Bank N.A., formerly West Town Bank & Trust and pursuant to the Judgment entered against Judgment Debtor Param Kaur ("Judgment Debtor") on May 9, 2022 and registered on March 25, 2025 in the above-entitled Court in the above-entitled case, and good cause appearing therefore;

/ / /

/ / /

/ / /

/ / /

KEMP JONES, LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Judgment Debtor's distributions, if any, from Charm Hospitality, LLC, a Nevada limited liability company, shall be charged with payment to Judgment Creditor, as assignee, of the unsatisfied amount of the aforementioned Judgment in the sum of $8,205.562.89 plus post-judgment interest accruing at the rate of 2.10% per annum, in the amount of $498.88 per day.

IT IS SO ORDERED.

Dated October 29, 2025.

James C. Mahan
UNITED STATES DISTRICT JUDGE

Respectfully Submitted by:

*/s/ Nathanael R. Rulis*
Nathanael R. Rulis, Esq. (#11259)
Francesca M. Bergeret-Simpson, Esq. (#16499)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

*Attorneys for Capital Bank, N.A.*
*formerly known as West Town Bank & Trust*

# EXHIBIT 2

Original Certified Final Judgment

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **WEST TOWN BANK & TRUST,** | § | |
| **Plaintiff,** | § | **CASE NO. 4:21-cv-257** |
| | § | |
| ***v.*** | § | |
| | § | |
| **PARAM J. KAUR,** | § | |
| **Defendant.** | § | |

**FINAL JUDGMENT ORDER**

Plaintiff and Defendant having agreed to stipulate to judgment in the above-captioned matter;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

Final judgment is hereby entered in favor of plaintiff West Town Bank & Trust and against defendant Param J. Kaur on Count I of the *Amended Verified Complaint for Enforcement of Guarantee and Related Relief* [Dkt. No. 4] in the total amount of $8,205,562.89. Interest on the judgment amount shall accrue at the rate provided by 28 U.S.C. § 1961.

**SIGNED this 9th day of May, 2022.**

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

**STIPULATED AND AGREED TO BY:**

**PARAM J. KAUR**

By: ______________________

**WEST TOWN BANK & TRUST**

Michael T. Crawford

By: ______________________

A TRUE COPY I CERTIFY
DAVID A. O'TOOLE, CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
By: Becca Ferrill

LEGAL\57689752\1

# EXHIBIT 3

Nevada Secretary of State Information Sheet - Charm Hospitality, LLC

## Entity Information

### Entity Information

**Entity Name:**

CHARM HOSPITALITY L.L.C.

**Entity Number:**

E0211802016-3

**Entity Type:**

Domestic Limited-Liability Company (86)

**Entity Status:**

Dissolved

**Formation Date:**

05/10/2016

**NV Business ID:**

NV20161275643

**Termination Date:**

**Annual Report Due Date:**

5/31/2023

**Compliance Hold:**

**Series LLC:**

☐    **Restricted LLC:**   ☐

### Registered AGENT INFORMATION

**Name of Individual or Legal Entity:**

GERBER LAW OFFICES, LLP

**Status:**

Active

**CRA Agent Entity Type:**

**Registered Agent Type:**

Commercial Registered Agent

**NV Business ID:**

NV20131614145

**Office or Position:**

**Jurisdiction:**

NEVADA

**Street Address:**

491 4TH ST, Elko, NV, 89801, USA

**Mailing Address:**

**OFFICER INFORMATION**

☐ **View Historical Data**

| Title | Name | Address | Last Updated | Status |
|---|---|---|---|---|
| Managing Member | PARAM J KAUR | PO BOX 2145, FRISCO, TX, 75034, USA | 03/04/2019 | Active |

**Page 1 of 1, records 1 to 1 of 1**

Filing History Name History Mergers/Conversions

Return to Search        Return to Results

# EXHIBIT 4

Complaint (Case No. 2:25-cv-00282, ECF #1)

A.J. Kung, Esq.
Nevada Bar No. 7052
**KUNG & BROWN**
1020 Garces Ave.
Las Vegas, NV 89101
(702) 382-0883 Telephone
(702) 382-2720 Facsimile
ajkung@ajkunglaw.com
*Counsel for Plaintiff*
*Charm Hospitality LLC dba*
*Wingate by Wyndham Elko*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| CHARM HOSPITALITY LLC D/B/A WINGATE BY WYNDHAM ELKO,<br><br>Plaintiffs,<br><br>v.<br><br>NOHAYIA JAVED, ESQ.; and WEST TOWN BANK & TRUST; DOES I-X; ROE BUSINESS ENTITIES XI-XX,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT** |

COMES NOW, Plaintiff, Charm Hospitality LLC dba Wingate by Wyndham Elko ("Charm"), by and through its counsel of record, the law office of Kung & Brown, and for its causes of action against the Defendants, Nohayia Javed, Esq., Javed Law Firm, PLLC and West Town Bank & Trust (collectively "Defendants") and alleges as follows:

**I.**

**THE PARTIES**

1. Plaintiff, Charm Hospitality LLC dba Wingate by Wyndham Elko ("Charm") is a Nevada limited liability company, wholly owned by Param Kaur ("Kaur").

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

2. Defendant, Nohayia Javed, Esq. ("Javed") is an attorney licensed in the state of Texas, who represented Charm during times relevant herein, and who represented Charm as Pro Hac Vice counsel in *United States District Court Case Number 2:23-cv-0228-RFB-BNW*.

3. Defendant West Town Bank & Trust ("WTB") was a mortgagee on the property located at 3019 Idaho Street, Elko, Nevada 89801 ("Hotel") which was owned by Charm until it was foreclosed upon by WTB on June 8, 2022.

4. The true names and capacities whether individual, corporate, associates, or otherwise of Defendants, Does I through X, inclusive, and Roe Corporations XI through XX, inclusive, are unknown to Charm, who therefore sues said Defendants by such fictitious names. Charm is informed and believes and thereby alleges that each of the Defendants designated herein as Does I through X, inclusive, and Roe Corporations XI through XX, inclusive, are responsible in some manner for the events and happenings referred to and caused damage proximately to Charm as alleged herein. Charm will ask leave of this court to amend this Complaint to insert the true names and capacities when the same has been ascertained and enjoin such Defendants in this action.

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

**II.**

**JURISDICTION & VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because there is complete diversity between Plaintiff and Defendants who are citizens from different States and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

6. Venue is appropriate and proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in

Nevada (and specifically related to *United States District Court Case Number 2:23-cv-0228-RFB-BNW*).

III.

**GENERAL ALLEGATIONS**

**Charm's Financial Woes and Bankruptcy Filing.**

7. During times relevant herein, Charm owned the Hotel located in Elko, Nevada. WTB was the mortgage lender holding the first deed of trust on the Hotel in the approximate sum of $6,831,114.34 as of the petition date.

8. Due in large part to the Covid-19 pandemic, Charm suffered an extensively reduced income and was unable to pay its debts as it became due, including the mortgage debt owed to WTB.

9. As a result, on September 15, 2020, Charm was forced to file for Chapter 11 bankruptcy relief[1].

10. Despite obtaining the unanimous approval of all classes of creditors entitled to vote on the proposed Plan of Reorganization, Charm's Plan of Reorganization was ultimately denied by the Bankruptcy Court because it concluded that Charm's income was insufficient to fund the proposed Plan and Charm's bankruptcy case was ultimately dismissed on March 17, 2022.

**Water Damage Destroys the Hotel and Charm Retains Javed to Submit its Insurance Claim.**

11. During the course of the bankruptcy proceeding, in approximately December of 2021, the Hotel suffered catastrophic damage due to a broken water line which largely destroyed

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

the Hotel, and all of the furnishings contained therein.

12. The Hotel was insured by General Security Indemnity Company of Arizona ("GSICA") for the loss and in or about March 2022, Charm retained Javed to represent Charm in submitting its insurance claim and Javed sent her letter of representation to GSICA on or about February 24, 2022[2] which was acknowledged as received by Peninsula Insurance Bureau ("PIB"), the third party claims administrator for GSICA[3].

13. Javed did not have a written contingency fee agreement with Charm for the insurance dispute matter at this time, as required by Texas Rules of Professional Conduct ("TRPC") 104.

14. Rather, Javed merely advised Charm that she would handle the matter for the same 20% contingency fee that she historically and traditionally charged for this matter, which was also the same contingency fee charged by Javed for other prior matters that she handled for Charm's authorized agent, Jagmohan Dillon, and other affiliate/related entities and persons[4].

**WTB Forecloses on the Hotel but Fails to Seek any Deficiency Judgment.**

15. On or about June 8, 2022, WTB foreclosed on the Hotel and the Hotel was sold at auction for $2,901,000.00[5].

16. Pursuant to Nevada Revised Statutes ("NRS") §40.455, WTB was required to seek a deficiency judgment against Charm, if at all, within 6 months after the date of the foreclosure sale.

[1] *Nevada Bankruptcy Court Case No. 20-50880-NMC.*

[2] A true and correct copy of Javed's Letter of Representation to PIB is attached hereto as **Exhibit 1**.

[3] A true and correct copy of the Letter from PIB to Javed dated April 11, 2022, is attached hereto as **Exhibit 2**.

[4] A true and correct copy of Javed's Fee Agreements is attached hereto as **Exhibit 3**.

[5] A true and correct copy of the Trustee's Deed Upon Sale is attached hereto as **Exhibit 4**.

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

17. Thus, WTB was required to commence its deficiency action against Charm no later than December 9, 2022.

18. WTB never sought a deficiency judgment against Charm and is now precluded from doing so pursuant to NRS §40.455.

**Javed Advises Charm that WTB was a Necessary Party to the Insurance Claim.**

19. On or about April of 2022, for reasons unknown, Javed (who was solely counsel for Charm at the time) advised Charm that WTB was a necessary party to the insurance claim because GSICA had demanded that WTB be joined as a claimant in the claim.

20. Javed further advised Charm that WTB was required to be a joint claimant because a "lienholder" and designated "loss payee" under the policy.

21. Contrary to Javed's false representations to Charm, neither PIB nor GSICA had required that WTB be made a party to the dispute, and the *sua sponte* determination (that WTB was a necessary party to the insurance claim dispute) *was made by Javed*, who at the time was solely counsel to Charm and owed Charm her full loyalty and her fiduciary obligation was to counsel and advise *Charm* with only *Charm's* best interests in mind.

22. Javed then communicated directly with WTB, sending WTB her retainer agreement and soliciting her retention by WTB[6].

23. WTB acknowledged receipt of Javed's retainer and advised Javed that it was undergoing "legal review" on April 6, 2022[7].

24. In the same email, WTB also requested Javed's "resume and the information

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

[6] A true and correct copy of the email from WTB dated April 6, 2022, acknowledging receipt of Javed's retainer is attached hereto as **Exhibit 5**.

[7] *Id.* (**Exhibit 5**)

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

about the firm" because WTB "could not find anything online."[8]

25. Charm is unaware of what additional communications transpired between Javed and WTB.

26. Ultimately, however, Javed advised Charm that a "joint fee agreement" and conflict waiver would be necessary for Javed to continue prosecuting Charm's insurance claim.

27. Javed then prepared a Contingent Fee Contract and Power of Attorney ("Joint Fee Agreement"[9]) which included a "Joint Representation Conflict Waiver" and instructed Charm to execute the same.

28. At the time Javed prepared and presented the Joint Fee Agreement, Javed was solely counsel to Charm (who had not yet agreed to waive any conflicts to allow Javed to also represent WTB with respect to the insurance dispute).

29. Moreover, the Joint Fee Agreement didn't merely provide for the contingency fee Javed was charging, but went further on to set out a disbursement allocation between Charm and WTB for any insurance proceeds recovered, providing that any recovery would be disbursed as follows:

a. Payment of expenses incurred by West Town Bank & Trust in the foreclosure and related legal proceedings
b. Curtailment of the principal balance of the loan
c. Accrued interest, fees and costs
d. Any remaining funds shall be payable to Charm Hospitality, LLC

30. It is unclear at this time who proposed the distribution allocation, WTB or Javed. Regardless, because WTB had no deficiency judgment against Charm at this time (August 2022), Javed, *whose duty of loyalty was to Charm*, should have never counseled Charm to agree to such a distribution allocation, which was not in Charm's best interest, but rather, was clearly in

[8] *Id.* (**Exhibit 5**)

[9] A true and correct copy of the Joint Fee Agreement is attached hereto as **Exhibit 6**.

WTB's best interest.

31. Additionally, all of the "legwork" for submitting the claim had to be provided by Charm yet the Joint Fee Agreement provided no provision for reimbursement of Charm's costs related to the same (ie: travel expenses to attend depositions, etc…, costs of compiling and submitting documents, meeting with appraisers, etc…)

32. The Joint Fee Agreement further contained a Conflict of Interest Waiver which was inappropriate and improper given the direct conflict of interests as between Charm and WTB, and which failed to comply with the TRPC 1.06, because Javed could not have reasonably believed that her representation of the Charm and WTB who had directly divergent and contradicting interests in the insurance proceeds would not materially affected, and because Javed did not fully disclose the "existence, nature, implications, and possible adverse consequences of the common representation and advantages involved, if any" to Charm.

33. Specifically, Javed did not disclose, inform, or explain to Charm that there was no benefit to Charm to add WTB to its insurance claim dispute with GSICA.

34. Javed further did not disclose, inform, or explain to Charm that Charm could and should dispute the amounts allegedly owed to WTB, and that if WTB failed to apply for a deficiency judgment against Charm within 6 months of the foreclosure date, that WTB would be barred from seeking any deficiency against Charm.

35. Javed further did not disclose, inform, or explain to Charm that Charm could and should have, at a minimum, requested some payment or reimbursement in exchange for Charm's time, expenses, and labors in assembling and preparing documents and litigation requirements related to the insurance claim.

36. Javed further did not disclose, inform, or explain to Charm that WTB's identification as a "loss payee" under the insurance policy could be removed or amended in the

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

event Charm's debt to WTB was extinguished or barred.

37. Rather, Javed advised Charm to agree to the Joint Fee Agreement and Conflict Waiver and in reliance upon Javed's legal advice and as Charm's trusted counsel, and at the instruction of Javed, Charm executed the Joint Fee Agreement with the Conflict Waiver on or about August 9, 2022[10].

38. Charm's execution of the Conflict Waiver was without the requisite "informed consent" necessary to satisfy the requirements of TRPC 1.06(c)(2) and thus, was void *ab initio*.

**Litigation and Settlement.**

39. On or about February 13, 2023, because the statute of limitations was about to expire, Javed filed Plaintiff's Original Complaint on behalf of Charm against GSICA which was designated as *United States District Court Case Number 2:23-cv-0228-RFB-BNW*. WTB was not listed as a plaintiff to the action, despite the fact that WTB had completed its foreclosure on the Hotel months earlier on June 8, 2022, and despite the fact that WTB had already retained Javed to represent WTB with respect to the insurance claim dispute with GSICA.

40. As of the complaint filing date of February 13, 2023, WTB's legal right to seek a deficiency judgment had expired pursuant to NRS §40.455 because the foreclosure took place on June 8, 2022, and more than six months had passed since the foreclosure sale; therefore, WTB was properly not named as a plaintiff in the complaint.

41. On October 20, 2023, for reasons unknown, Javed filed on Charm's behalf (without Charm's knowledge nor consent) a Motion for Leave to File First Amended Complaint[11] wherein Javed, purportedly on behalf of Charm, requested leave to file an amended

[10] *Id.* (**Exhibit 6**)

[11] A true and correct copy of the Motion for Leave to File First Amended Complaint [*United States District Court Case Number 2:23-cv-0228-RFB-BNW*, Doc 23] (without exhibits) is attached hereto as **Exhibit 7**.

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

Complaint to add WTB as a plaintiff to the action ("Motion to Amend").

42. In the Motion to Amend, Javed asserted (again on behalf of Charm without Charm's knowledge or consent) that WTB "was also named as a loss payee under Defendant's insurance policy…Accordingly, Bank must be added as a plaintiff in this matter to protect its interests as a loss payee under the Policy and its rights thereunder."[12]

43. At the time Javed filed the Motion to Amend, Charm legally owed no debt to WTB because WTB had failed to obtain a deficiency judgment against Charm within 6 months of the foreclosure sale.

44. Therefore, Javed's allegation was directly contrary to the best interests of Charm, and moreover, a real and actual conflict existed between Charm and WTB which precluded Javed from representing both Charm and WTB under the terms of the Joint Fee Agreement between the parties.

45. As a result of Javed's actions, the Court granted the Motion to Amend and WTB was made a party to the action despite the fact that WTB's addition as a party to the action was directly contrary to the best interests of Charm.

46. The insurance claim dispute with GSICA was ultimately settled at mediation or about December 17, 2024.

47. The settlement agreement reached at mediation did not have any payment allocation of the settlement sum as between Charm and WTB, nor did the parties agree that the settlement payment was required to be remitted to Javed.

48. On or about mid-January Javed called Charm's agent and instructed Charm to sign the written settlement agreement which Javed would be sending to Charm.

49. Javed did not previously afford Charm any opportunity to review, comment, or

[12] *Id.* at 2:7-10. (**Exhibit 7**)

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

propose revisions to the settlement agreement but merely instructed Charm to execute the same.

50. Charm asked what Charm's net recovery would be under the written settlement agreement to which Javed replied that Charm was required to sign the agreement first, then the amounts would be determined.

51. Javed assured Charm that it would receive some payment from the proceeds but would not specify the amount.

52. Charm refused to sign the written settlement agreement until a payment distribution was provided, so that Charm could first see how much it would be recovering.

53. Javed refused to provide any proposed distribution to Charm and never provided a copy of the written settlement agreement to Charm.

54. Javed finally provided a copy of the proposed written settlement agreement for the first time to Charm's present counsel on January 20, 2024.

55. Charm asked independent counsel to review the settlement agreement at which time Javed's conflict of interest and legal malpractice was revealed and discovered.

56. Based thereon, Charm refused to execute the settlement agreement as drafted, because it contained terms never discussed, negotiated or approved by Charm with respect to how payment was to be made; however, Charm did agree to execute the settlement agreement providing the settlement payment was interplead with the court, held in escrow, or held by a third party in trust.

57. Javed and WTB agreed to interpleader of the settlement proceeds, but GSICA refused, instead, electing to file a Motion to Enforce Settlement[13].

58. GSICA's refusal to allow interpleader of the funds is perplexing and Charm reserves the right to seek to add GSICA as a party to this action if it is subsequently determined

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

[13] A true and correct copy of GSICA's Motion to Enforce Settlement [*United States District Court Case Number*

that GSICA's actions were in conspiracy with Javed and/or WTB to harm and injure Charm.

**IV.**

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty/Tortious Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing/Legal Malpractice as to Javed Only)**

59. Charm repeats and realleges the allegations set forth above and incorporates the same as though fully set forth herein.

60. An attorney-client relationship existed between Charm and Javed during all times relevant herein.

61. As a result of the attorney-client relationship, Javed owed Charm a fiduciary duty and duty of loyalty to act in the best interests of Charm.

62. Javed further owed Charm a duty to use such skill, prudence, and diligence as lawyers of ordinary skill; and capacity possess in exercising and performing the tasks which they undertake[14].

63. Javed breached her duties, her contractual obligations, and her Covenant of Good Faith and Fair Dealing to Charm by, among other things:

a. Advising Charm that WTB was a necessary party to the insurance claim dispute;

b. Advising Charm that Javed should represent both Charm and WTB with respect to the insurance claim dispute;

c. Advising Charm that there were no conflicts of interest with respect to Javed's

*2:23-cv-0228-RFB-BNW*, Doc 50] is attached hereto as **Exhibit 8**.

[14] *See generally*, *Day v. Zubel*, 112 Nev. 972, 976 (1996)

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

representation of both Charm and WTB when in fact a direct and actual conflict existed;

d. Failing to advise Charm that it could and should dispute the debt allegedly owed to WTB by Charm;

e. Seeking to retain WTB as a client for Javed's own interests, to the direct harm and detriment of Charm;

f. Failing to advise Charm that WTB's claim for any deficiency judgment against Charm would be barred if WTB did not seek a deficiency judgment against Charm within six months of the foreclosure date under NRS §40.455;

g. Rendering legal services to Charm from approximately February 2022-August 9, 2022, on a contingency basis without a written contingency fee agreement as required by TRPC 104;

h. Falsely representing to Charm that Javed's contingency fee was 20% but then changing the fee to 33% in the Joint Fee Agreement;

i. Drafting the Joint Fee Agreement, while Javed was only Charm's counsel, in a manner which was directly contrary to Charm's best interests, but rather, favored only WTB so that Javed could increase her contingency fee from 20% to 33% and 40%;

j. Advising Charm to agree to a conflict waiver with WTB when the waiver was clearly not in the best interests of Charm, who had all of the rights to payment of insurance proceeds under the original fee agreement, but then abdicated the first right of payment to WTB in the Joint Fee Agreement with no protections or assurances for Charm;

k. Advising Charm to agree to a conflict waiver with WTB without providing

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

"full disclosure of the existence, nature, implications, and possible adverse consequences of the comment representation and the advantages involved, if any";

l.  Failing to ensure that Charm's expenses incurred in prosecuting the insurance claim were reimbursed out of any settlement proceeds;

m.  Drafting the Joint Fee Agreement with an allocation of any recovery proceeds between Charm and WTB which favored and benefitted only WTB and which did not protect Charm;

n.  Charging Charm an excessive, unreasonable, and unconscionable fee in violation of TRPC 1.04.

o.  Charging Charm for local Nevada counsel's fees, when those fees should have been paid out of Javed's fees because Javed was not licensed to practice law in Nevada and thus required the assistance of Nevada counsel;

p.  Failing to advise Charm that Charm did not owe WTB any deficiency amounts when WTB failed to obtain a deficiency judgment against Charm within six months of the foreclosure date as mandated by NRS §40.455;

q.  Falsely representing to GSICA in Javed's letter to GSICA dated December 26, 2022, that "Westtown Bank is entitled to damages in the amount of the deficiency of Charm Hospitality LLC and incurred expenses less the recovery of the auctioned price of the property.  All remaining damages belong to Charm Hospitality LLC."

r.  Disbursing the first insurance payment in the sum of $1,597,130.33 to Javed and WTB only, without advising Charm of the same, and without Charm approving the disbursement of $1,106,089.23 to WTB (despite the fact that

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

WTB had not obtained any deficiency judgment against Charm);

s. Failing to obtain information from WTB with respect to what amounts, if any, WTB received from the USDA who was the federal guarantor of 70% of the mortgage loan, and advise Charm of any potential offset resulting from the same;

t. Negotiating a settlement with GSICA wherein the settlement payment was to be paid jointly to Charm, WTB and Javed, and delivered to Javed's law firm, without Charm's knowledge or consent;

u. Instructing Charm to execute a settlement agreement with terms not agreed to by Charm;

v. Refusing to provide Charm with a proposed distribution allocation of the insurance settlement payment; and

w. Failing to negotiate an allocation of the settlement amount to be paid to Charm for the destruction of Charm's personal property.

64. As a direct and proximate cause of Javed's tortious breaches, negligence, and legal malpractice, Charm has been injured and damaged in an amount in excess of $3,000,000.00.

65. Javed's actions exceeded mere reckless or gross negligence and were oppressive, fraudulent, and malicious, therefore, exemplary and punitive damages are appropriate and should be awarded here.

66. Charm is furthermore entitled to an award of its attorney's fees and costs incurred herein as special damages because the fees and costs that will be incurred herein were a foreseeable result of Javed's tortious conduct, breach of fiduciary duty/legal malpractice, and because Charm is now required to seek recovery of improperly disbursed funds to Javed and

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

WTB as a direct and proximate result of Javed's actions.

**SECOND CLAIM FOR RELIEF**
**(Fraudulent Misrepresentation as to Javed Only)**

67.    Charm repeats and realleges the allegations set forth above and incorporates the same as though fully set forth herein.

68.    Javed fraudulently misrepresented to Charm that WTB was a necessary party to the insurance dispute claim when WTB was not a necessary or property party to the dispute.

69.    GSICA did not require WTB to be joined or added as a party, rather it was Javed's idea to involve WTB because Javed's ulterior motive was to land WTB as a corporate client.

70.    In fact, in December 2022, GSICA even queried to Javed as to why Javed was seeking to add WTB as a party to the dispute.

71.    Javed's fraudulent misrepresentation to Charm was false and untrue, and made with the intent of inducing Charm to waive its conflicts with WTB so that Javed could land WTB as a corporate client and increase the contingency fee with Charm (from 20% to 33.3% and 40%)

72.    Charm reasonably relied upon the advise of Javed whom Charm reasonably believed was loyal to Charm and was abiding by her fiduciary obligations to Charm.

73.    In reasonable reliance upon Javed's fraudulent misrepresentation, Charm agreed to execute the Joint Fee Agreement and Conflict Waiver.

74.    As a direct and proximate result of Javed's fraudulent misrepresentation, Charm has been injured and damaged in an amount in excess of $3,000,000.00.

75.    Javed's actions exceeded mere reckless or gross negligence and were oppressive, fraudulent, and malicious, therefore, exemplary and punitive damages are appropriate and should be awarded here.

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

76. Charm is furthermore entitled to an award of its attorney's fees and costs incurred herein as special damages because the fees and costs that will be incurred herein were a foreseeable result of Javed's fraudulent misrepresentation, and because Charm is now required to seek recovery of improperly disbursed funds to Javed and WTB as a direct and proximate result of Javed's actions.

**THIRD CLAIM FOR RELIEF**
**(Conversion as to All Defendants)**

77. Charm repeats and realleges the allegations set forth above and incorporates the same as though fully set forth herein.

78. From the $1,597,130.33 insurance claim payment from GSICA paid in January 2023, Javed paid herself $479,139.09 in legal fees and disbursed $1,106,089.23 to WTB without the knowledge or consent of Charm.

79. Because WTB did not obtain a deficiency judgment against Charm, and is now precluded from seeking one, WTB was not owed any amounts by Charm as of January 26, 2023, when the initial insurance claim payment was paid.

80. Therefore, Javed's disbursement of $1,106,089.23 was improper and WTB's continued dominion over said funds is wrongfully exerted over the funds which properly belong to Charm and in derogation, exclusion and defiance of Charm's title or rights therein.

81. Similarly, Javed should not be entitled to any contingency fee on the insurance payment due to Javed's fraud, breaches, negligence, and tortious conduct and Javed's continued dominion over said funds is wrongfully exerted over the funds which properly belong to Charm and in derogation, exclusion and defiance of Charm's title or rights therein.

82. Additionally, an additional payment is contemplated to be received pursuant to the settlement agreement between Charm, WTB, and GSICA in *United States District Court*

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

*Case Number 2:23-cv-0228-RFB-BNW*; and to the extent any amounts are paid to Javed or WTB from those proceeds (rather than to Charm), then any such payments would similarly be converted by Javed and WTB.

83. As a direct and proximate cause of Javed and WTB's conversion of funds properly belonging to Charm, Charm has been injured and damaged in an amount in excess of $1,585,228.32.

84. Javed and WTB's conversion was oppressive, fraudulent, and malicious, therefore, exemplary and punitive damages are appropriate and should be awarded here.

85. Charm is furthermore entitled to an award of its attorney's fees and costs incurred herein as special damages because the fees and costs that will be incurred were a foreseeable result of Javed and WTB's conversion, and because Charm is now required to seek recovery of said funds from Javed and WTB.

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

**<u>FOURTH CLAIM FOR RELIEF</u>**
**(Unjust Enrichment as to All Defendants)**

86. Charm repeats and realleges the allegations set forth above and incorporates the same as though fully set forth herein.

87. From the $1,597,130.33 insurance claim payment from GSICA paid in January 2023, Javed paid herself $479,139.09 in legal fees and disbursed $1,106,089.23 to WTB without the knowledge or consent of Charm.

88. Because WTB did not obtain a deficiency judgment against Charm, and is now precluded from seeking one, WTB was not owed any amounts by Charm as of January 26, 2023 when the initial insurance claim payment was paid.

89. Therefore, Javed's disbursement of $1,106,089.23 was improper and WTB has been unjustly enriched to the direct harm and detriment of Charm.

90. Similarly, Javed's contingency fee must be forfeited[15] due to Javed's fraud, breaches, negligence, and tortious conduct and as such Javed has been unjustly enriched by receiving $479,139.09 in fees while she was under a direct conflict of interest, to the direct harm and detriment of Charm.

91. Additionally, an additional payment is contemplated to be received pursuant to the settlement agreement between Charm, WTB, and GSICA in *United States District Court Case Number 2:23-cv-0228-RFB-BNW*; and to the extent any amounts are paid to Javed or WTB from those proceeds (rather than to Charm), then Javed and WTB would similarly be unjustly enriched by the same.

92. As a direct and proximate cause of Javed and WTB's unjust enrichment, Charm has been injured and damaged in an amount in excess of $1,585,228.32.

93. Charm is furthermore entitled to an award of its attorney's fees and costs incurred herein as special damages because the fees and costs that will be incurred were a foreseeable result of Javed and WTB's unjust enrichment, and because Charm is now required to seek recovery of said funds from Javed and WTB.

**FIFTH CLAIM FOR RELIEF**
**(Fraudulent Misrepresentation and Concealment as to WTB Only)**

94. Charm repeats and realleges the allegations set forth above and incorporates the same as though fully set forth herein.

95. During times relevant herein, WTB fraudulently represented to Charm, various courts, and other third parties that WTB was the lawful owner of the mortgage loan secured by the Hotel, when in reality, the loan was jointly owned by WTB and Utah Bank.

[15] *See generally, Indian Harbor Ins. Co. v. KB Lone Star Inc*., No. H-11-1846, 2012 U.S. Dist. LEXIS 194643 at*11 (S.D. Tex. June 18, 2012). (Pursuant to the Joint Fee Agreement, Texas law is applicable to this dispute.)

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

96. WTB further concealed and failed to disclose to Charm, various courts, and other third parties that 70% of the mortgage loan was federally guaranteed by the USDA.

97. To date, Charm does not know what amounts, if any, USDA has paid WTB and/or Utah Bank pursuant to its guarantee.

98. WTB's fraudulent misrepresentations and fraudulent concealment of the USDA guarantee was oppressive, fraudulent, and malicious, therefore, exemplary and punitive damages are appropriate and should be awarded here.

99. As a direct and proximate cause of WTB's fraudulent misrepresentations and fraudulent concealment, Charm has been injured and damaged in an amount in excess of $1,585,228.32.

100. Charm is furthermore entitled to an award of its attorney's fees and costs incurred herein as special damages because the fees and costs that will be incurred were a foreseeable result of WTB's fraudulent misrepresentations and fraudulent concealment, and because Charm is now required to seek recovery of improperly disbursed funds from Javed and WTB.

**SIXTH CLAIM FOR RELIEF**
**(Declaratory Relief as to WTB Only)**

101. Charm repeats and realleges the allegations set forth above and incorporates the same as though fully set forth herein.

102. On February 17, 2022, WTB obtained an order from the Nevada Bankruptcy Court allowing WTB to foreclose upon the Hotel[16].

///

[16] A true and correct copy of the Order Granting Motion for Relief from Automatic Stay [*Nevada Bankruptcy Court Case No. 20-50880-NMC*, ECF 271] is attached hereto as **Exhibit 9**.

103. On March 17, 2022, the Nevada Bankruptcy Court entered an Order Dismissing Charm's bankruptcy case[17].

104. On June 8, 2022, WTB, by and through Prestige Default Services, LLC, completed its foreclosure sale of the Hotel and the Hotel was sold to OG elko LP for $2,901,000.00[18].

105. NRS §40.455 provides in pertinent part that:

> 1. Except as otherwise provided in subsection 3, upon application of the judgment creditor or the beneficiary of the deed of trust within 6 months after the date of the foreclosure sale and after the required hearing, the court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively.
>
> . . .

106. NRS §40.455 is a statute of repose which bars a cause of action after a specified time period regardless of when the cause of action was discovered, or a recoverable injury occurred. *Bank of N.Y. Melon v. Kim*, 2018 Nev. Dist. LEXIS 1321 *14 (Nov. 26, 2018).

107. NRS 40.455 "bars a judgment creditor from proving a deficiency unless the creditor files an application for a deficiency within six months following a foreclosure sale. . ." *Badger v. Eighth Judicial Dist. Court*, 132 Nev. 396, 405 (2016).

108. WTB did not commence any action nor make any application for a deficiency judgment against Charm within 6 months of the foreclosure sale of the Hotel, and in fact, to date WTB has never sought nor obtained a deficiency judgment against Charm.

[17] A true and correct copy of the Notice of Dismissal, Notice That All Pending Hearings Are Vacated [*Nevada Bankruptcy Court Case No. 20-50880-NMC*, ECF 276] is attached hereto as **Exhibit 10**.

[18] *See*, **Exhibit 4**.

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

109. Despite the fact that WTB did not obtain any deficiency judgment against Charm, and is now precluded from doing so, WTB alleges that it is entitled to insurance proceeds which are due to Charm under its insurance policy with GSICA because WTB was named as a "loss payee" on the insurance policy.

110. Because WTB is precluded from seeking any further or deficiency payment from Charm[19], its rights as a "loss payee" have similarly been extinguished and WTB.

111. Accordingly, a justiciable controversy now exists as between Charm and WTB who have adverse interests with respect to the insurance claim proceeds.

112. Charm, as the movant seeking declaratory relief, has a legally protectable interest in the insurance proceeds because Charm was the named insured under the insurance policy.

113. Because Charm and WTB have settled Charm's claim with GSICA, and GSICA will be remitting payment for an agreed upon settlement amount, this controversy is ripe for determination.

114. Based on the foregoing, Charm respectfully requests that this Honorable Court enter a declaratory judgment declaring and confirming that:

a. WTB is barred from seeking any deficiency judgment against Charm pursuant to NRS §40.455 because WTB did not commence a deficiency action against Charm within six months of the foreclosure date of June 8, 2022;

b. WTB has no further rights for payment as against Charm; and

c. WTB has no rights, title, or interest in the insurance claim proceeds, as a "loss payee" or otherwise, which will be remitted by GSICA pursuant to the

[19] Once the non-judicial foreclosure concludes, the creditor is barred from seeking any deficiency unless it complies with specific requirements for deficiency collection. NRS 40.455. As a matter of law, the creditor, thus, must obtain timely judicial valuation of the real property collateral or deemed waiver of its deficiency rights will result. *Idnani v. Serap* (*In re Serap*), No. NV-18-1077-BKuTa, 2019 Bankr. LEXIS 1397, at *22 n.2 (B.A.P. 9th Cir. May 2, 2019)

settlement in *United States District Court Case Number 2:23-cv-0228-RFB-BNW.*

**SEVENTH CLAIM FOR RELIEF**
**(Declaratory Relief as to Javed Only)**

115. Charm repeats and realleges the allegations set forth above and incorporates the same as though fully set forth herein.

116. Javed was retained by Charm to handle Charm's insurance claim with GSICA.

117. Once retained, pursuant to the Joint Fee Agreement which provided that Texas law would apply to any disputes arising out of the Joint Fee Agreement, Javed had a duty of loyalty to Charm under TRPC 106.

118. Javed breached her duty of loyalty to Charm by, among other things, advising Charm what WTB was a necessary party to the dispute, when WTB in fact, was not a necessary party and joinder of WTB was directly contrary to the best interests of Charm.

119. Rather, Javed was seeking to gain WTB as a corporate client and sacrificed Charm's interests to further her own personal and ulterior motives and goals.

120. Javed further breached her duty of loyalty to Charm by, among other things, preparing and advising Charm to sign a fee agreement which drastically benefited WTB at the expense of and detriment to Charm.

121. Javed further breached her duty of loyalty to Charm by, among other things, disbursing insurance proceeds to herself and WTB without Charm's knowledge and consent.

122. Javed's further charged an unreasonable and excessive contingency fee as set forth in the Joint Fee Agreement which was in violation of TRPC 1.04.

123. In addition to Javed's excessive and unreasonable contingency fee, Javed has billed Charm for legal services from Robertson, Johnson, Miller & Williamson, a Nevada law

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

firm that Javed was required to retain to assist her and to act as Charm's local counsel because Javed is not licensed to practice law in Nevada; thus, fees owed to Robertson, Johnson, Miller & Williamson should have been paid out of Javed's fees rather than billed to Charm *in addition* to Javed's fees.

124. Javed has already received $479,139.09 in fees and has asserted an attorney's lien for an additional fee in the sum of $1,470,516.65.

125. Charm, as the movant seeking declaratory relief, has a legally protectable interest with respect to the Joint Fee Agreement because he is a party thereto.

126. Because Charm and WTB have settled Charm's claim with GSICA, and GSICA will be remitting payment for an agreed upon settlement amount, upon which Javed has asserted her attorney's lien, this controversy is ripe for determination.

127. Based on the foregoing, Charm respectfully requests that this Honorable Court enter a declaratory judgment declaring and confirming that:

a. The contingency fee charged by Javed in the Joint Fee Agreement was excessive, unreasonable, unconscionable, and thus unenforceable and void *ab initio*;

b. Javed has forfeited any fees and any right to fees related to the insurance claim because Javed labored under a conflict of interest during almost the entire time of her retention, which caused Javed to favor WTB and assist WTB in obtaining payment from GSICA to the direct harm and detriment of Charm;

c. Javed's attorney's lien is invalid, void, and of no legal effect; and

d. Javed must forfeit the $479,139.09 she has already received in fees and refund the same to Charm.

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

V.

PRAYER FOR RELIEF

**WHEREFORE**, Charm prays for relief as follows against defendants as follows:

**As to Javed**:

1. For an award of compensatory damages for Javed's legal malpractice, breaches, tortious actions, conversion, and fraudulent misrepresentations in an amount in accordance with the evidence;
2. For an order requiring Javed to disgorge and forfeit any and all legal fees received by Javed related to the insurance claim with GSICA;
3. For an award of exemplary and punitive damages in an amount sufficient to punish Javed for her oppressive and malicious actions, and to deter Javed from engaging in such similar actions in the future;
4. For an order that any payments from GSICA be either deposited with the Court or held in trust by a licensed Nevada escrow company or in an IOLTA trust account for any attorney that is not related to or affiliated with Javed, pending distribution only upon agreement by all parties or Court order;
5. For an order declaring the Joint Fee Agreement and Conflict Waiver to be null and void *ab initio*;
6. For an award of pre and post judgment interest in accordance with the law;
7. For an award of Charm's attorney's fees and costs incurred herein as special damages; and
8. For such further and other relief as the Court may deem just and appropriate.

///

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

**As to WTB**:

9. For an order declaring that WTB is barred from seeking any deficiency judgment against Charm pursuant to NRS §40.455;

10. For an order declaring the Joint Fee Agreement and Conflict Waiver to be null and void *ab initio*;

11. For an order requiring WTB to immediately return to Charm the $1,106,089.23 wrongfully disbursed to WTB by Javed in February 2023;

12. For an order declaring that WTB is no longer a "loss payee" on the GSICA insurance policy because WTB is no longer owed any mortgage debt from Charm on the foreclosed Hotel;

13. For an award of pre and post judgment interest in accordance with the law;

14. For an award of Charm's attorney's fees and costs incurred herein as special damages; and

15. For such further and other relief as the Court may deem just and appropriate.

Dated this 11th day of February 2025.

**KUNG & BROWN**

*/s/ A.J. Kung*
A.J. Kung, Esq.
1020 Garces Avenue
Las Vegas, Nevada 89101
*Counsel for Plaintiff Charm Hospitality LLC dba Wingate by Wyndham Elko*

**EXHIBIT LIST**

| No.: | Description: |
|---|---|
| 1 | Javed's Letter of Representation to PIB |
| 2 | Letter from PIB to Javed dated April 11, 2022 |
| 3 | Javed's Fee Agreements |
| 4 | Trustee's Deed Upon Sale |
| 5 | Email from WTB dated April 6, 2022, acknowledging receipt of Javed's retainer |
| 6 | Joint Fee Agreement Between Charm, WTB & Javed |
| 7 | Motion for Leave to File First Amended Complaint (without exhibits) [*Nevada District Court Case 2:23-cv-00228-RFB-BNW*, Doc 23] |
| 8 | GSICA's Motion to Enforce Settlement [*Nevada District Court Case 2:23-cv-00228-RFB-BNW*, Doc 50] |
| 9 | Order Granting Motion for Relief from Automatic Stay [*Nevada Bankruptcy Court Case No. 20-50880-NMC*, ECF 271] |
| 10 | Notice of Dismissal, Notice That All Pending Hearings Are Vacated [*Nevada Bankruptcy Court Case No. 20-50880-NMC*, ECF 276] |

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

# EXHIBIT "1"

# JAVED LAW FIRM, PLLC

3019 Spider Lily
San Antonio, TX 78258

Phone: 832-360-0476
Fax: 281-605-5020

---

April 7, 2022

**LETTER OF REPRESENTATION**

**Via Email:** tpa@pibadjusters.com **&** sgrandberry@pibadjusters.com

Re: Insured: Charm Hospitality, LLC dba Wingate by Wyndham Elko
Address: 3019 E. Idaho Street Elko, NV 89801
Claim No.: 952339
Policy No.: 41510-000345-02
Date of Loss: 2-24-22

To Whom It May Concern,

Our office is the retained counsel for the above-referenced insured in its claim for property damage resulting from a loss which occurred on February 24, 2022. Please direct all future correspondence to this office and do not contact my client directly without my consent.

After your investigation, if there is a coverage question or no coverage, then I would appreciate your notifying me of that in writing, along with a copy of the properly signed form required under the Nevada Insurance Code.

Thank you for your attention to this matter. Should you have any questions or wish to discuss this claim, please do not hesitate to contact my office.

Sincerely,

/s/*Nohayia Javed*

Nohayia Javed
Attorney at Law

# EXHIBIT "2"



April 11, 2022

Sent via email : attorneyjaved@gmail.com

RE: Insured: Charm Hospitality LLC Wingate By Wyndham Elko
Policy No.: 41510-000345-02
Claim No.: 952339
Date of Loss: 02/24/2022
Cause of Loss: Water Damage
Loss Location: 3019 E Idaho St, Elko, NV, 89801

Dear Nohavia Javed:

We are the authorized claims administrator for the insurance carrier, General Security Indemnity Company of Arizona subscribing to Policy No., 41510-000345-02 with the effective dates of 04/01/2021 -04/01/2022.

This letter is to confirm that we have received your letter of representation for the loss reported to have occurred on February 24, 2022 which generated the claim number 952339. Loss reported as water damage from leak of sprinkler head.

Currently the investigation of the claim is ongoing. An engineer with JS Held has been retained to determine the cause of the loss and OptimaSIU has been retained by the Carrier to obtain information and documentation to assist with the investigation of the claim.

The attached reservation of rights letter was issued and sent to the insured and mortgagee West Town Bank on March 11, 2022.

If you wish to discuss the claim further, I will be available on April 13, 2022 anytime and April 14, 2022 in the afternoon, please let me know if wish to discuss and your availability.

If you have any questions, please do not hesitate to contact us.

Best Regards,

PENINSULA INSURANCE BUREAU
**Shonda Grandberry**
TPA Account Manager
407-880-1100 ext. 195
sgrandberry@pibadjusters.com

Enclosure: Reservation of Rights letter

# EXHIBIT "3"

**CONTINGENT FEE CONTRACT AND POWER OF ATTORNEY**

This agreement is made between ("Client") with name, address and contact information below:

Name: [redacted]

Address: [redacted]

Email Address: [redacted] Phone: [redacted]1810

and

Nohayia Javed ("Attorneys").

1. Client retains Attorneys to represent Client's interests in prosecuting Client's claim for damages and insurance proceeds against one or more parties, including but not limited to any and all of Client's insurance companies, arising out of property damage to Client's properties, under this Master Retainer.

2. Client agrees Attorneys shall have a reasonable amount of time (at least 30 days) from the Attorney's receipt of the signed contract with all supporting documents on the claim to evaluate the merits of the claim. Supporting documents required are the insurance policy in effect at the time of the damages at issue and all claim documents (estimates by insurance company and correspondence regarding the claim). Attorneys, in their sole discretion, will then determine whether or not Attorneys will accept the case. **Attorneys will accept the case only by signing this Power of Attorney and Contingent Fee Contract ("the Contract").** Attorneys will send a fully executed copy to Client after signing the Contract. In the event Attorneys do not choose to accept the case, Client will be notified, and any attorney-client relationship will thereby be terminated.

**3. Client has agreed to compensate Attorneys on a contingent fee basis. Client hereby assigns to Attorneys a Twenty Percent (20%) Interest in any and all recoveries obtained in this matter, from any source, Pre-litigation and an additional Twenty Percent (20%) Interest in any and all recoveries obtained in this matter, from any source, Post-litigation. The total amount of Attorney's Fees shall be Forty Percent (40%). The phrase "any and all recoveries" means the gross amount of recoveries without deduction for expenses. The phrase "any and all recoveries" is to be construed broadly to include, but not be limited to, settlement checks, checks in satisfaction of a judgment, any beneficial interest in stock, property, assets, debt forgiveness or any other non-monetary remuneration obtained by Client in settlement or by judicial decree. However, the phrase "any and all recoveries" shall not be construed to include money that the Client has already received from the insurance carrier prior to the date of execution of this Contract.**

4. The fees set forth above shall be computed and figured from the gross amount recovered for Client in the case. The Client acknowledges that the fee described in this section is a reasonable contingent fee for Attorneys' services. The Client acknowledges that the Attorneys have discussed with the Client the fee described herein and have explained its implication. The Client acknowledges that the Client has accepted the fee terms described in this Contract.

5. The Attorneys will advance necessary and reasonable expenses that they deem necessary in the investigation, presentation, prosecution, and trial of the claim. **If any expenses are advanced by the Attorneys, such expenses will be repaid to them after the calculation and/or payment of any Attorneys' fees.** Expenses include, but are not limited to, filing fees, costs of court, courier service, expert witness fees, deposition transcript fees, copy charges by a third party, mailing charges, fax charges, travel and meal expenses, research costs, and computer and hard-copy data handling charges incurred for the purposes of prosecuting the claims of the Client herein.

**6. IF NO RECOVERY IS MADE, NO REPAYMENT OF ADVANCED LITIGATION EXPENSES WILL BE REQUIRED.**

7. The Attorneys will not compromise or settle the Client's claims without the consent of the Client.

8. The Attorneys have informed the Client that there can be no guarantee of success, recovery or the amount of any recovery. No one can accurately predict the outcome of the case.

9. The Client hereby grants the Firm a complete and general power of attorney to execute all documents connected with the claims, including, but not limited to, contracts, settlement checks, settlement agreements, compromises and releases, dismissals, judgments, orders and all other documents. By signing this agreement, Client specifically authorizes Attorneys to endorse, on behalf of Client and/or Attorneys, any drafts or checks in settlement of the Client's claim after the Client has approved the settlement. The Client shall keep the Attorneys advised of the client's address and shall appear on reasonable notice at any and all depositions and hearings and shall comply with all reasonable requests of the Attorneys.

10. The order of distribution of recoveries, if any, in this case, will be as follows: (1) Attorney fees calculated upon the gross recoveries shall be paid first to the Attorneys out of any recoveries in the case; (2) all expenses paid by Attorneys will be repaid second to the Attorneys out of any recoveries in the case; (3) the remaining portion of the recoveries will be paid third and last to the Client. Example: For demonstrative purposes only, consider the scenario in which Attorneys and Client recover a total of $100,000 from defendant(s) in the matter. Attorneys have incurred and/or paid $5,000 in expenses in the case. The funds will be disbursement as follows: Attorneys will first be paid attorney fees of 40% x $100,000, which amount equals $40,000. Second, Attorneys will be paid back the expenses incurred and/or paid by Attorneys in the case in the amount of $5,000. Third, Client's portion will be the remainder of the recoveries of $100,000 - $40,000 - $5,000 = $55,000.

11. The Client understands and agrees that the Firm will keep the Client reasonably informed of the litigation.

12. The Client represents that Client is the full owner of the claims and matters for which it has engaged the Firm; that such Client has full authority without encumbrance to prosecute same and to enter into this contract of employment.

13. This Contract shall be binding upon and inure to the benefit of the Client and Firm and their respective heirs, executors, administrators, legal representatives, successors and assigns. In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. This Contract shall be governed by Texas law. This Contract constitutes the sole and only Contract of the parties hereto and supersedes any prior understandings or written or oral agreement between the parties respecting the subject matter herein.

14. Client understands that it takes several years to resolve some cases while others may be resolved in a relatively short time period. Client further understands that there may be periods of actual or apparent inactivity in any case, not matter how diligently prosecuted. Client understands that neither the length of time it takes to resolve a case nor the mere existence of period of actual or apparent inactivity will affect the financing provisions of this agreement.

**<u>Notice to Client:</u> The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. In the event the Client has a complaint against or a dispute with**

**Attorneys, the Client may contact the State Bar Office of General Counsel to obtain information about how to file a complaint. The State Bar Office of General Counsel may be reached at 1-800-932-1900, which is a toll-free number.**

I certify and acknowledge that I have had the opportunity to read this Contract. I further state that I have voluntarily entered into this Contract fully aware of its terms and conditions.

SIGNED and ACCEPTED

Client(s): [redacted]

Signature [redacted] ________________ Date: _12/18/18__________________

**APPROVED AND ACCEPTED:**

**NOHAYIA JAVED**
**ATTORNEY AT LAW**

______________________________________

**By:** NOHAYIA JAVED

# CONTINGENT FEE CONTRACT AND POWER OF ATTORNEY

This agreement is made between ("Client") with name, address and contact information below:

Name: [redacted]

Address: [redacted]

Email: [redacted] Phone: [redacted]1810

and

Nohayia Javed ("Attorneys").

1. Client retains Attorneys to represent Client's interests in prosecuting Client's claim for damages and insurance proceeds against one or more parties, including but not limited to Client's insurance company, arising out of property damage due to fire to Client's business that is located at:

[redacted]

2. Client agrees Attorneys shall have a reasonable amount of time (at least 30 days) from the Attorney's receipt of the signed contract with all supporting documents on the claim to evaluate the merits of the claim. Supporting documents required are the insurance policy in effect at the time of the damages at issue and all claim documents (estimates by insurance company and correspondence regarding the claim). Attorneys, in their sole discretion, will then determine whether or not Attorneys will accept the case. **Attorneys will accept the case only by signing this Power of Attorney and Contingent Fee Contract ("the Contract").** Attorneys will send a fully executed copy to Client after signing the Contract. In the event Attorneys do not choose to accept the case, Client will be notified, and any attorney-client relationship will thereby be terminated.

**3. Client has agreed to compensate Attorneys on a contingent fee basis. Client hereby assigns to Attorneys a Forty Percent (40%) Interest in any and all recoveries obtained in this matter, from any source. Twenty Percent (20%) is due if the case is resolved prior to litigation. If suit is filed, an additional Twenty Percent (20%) will be due bringing the full attorney fee to Forty Percent (40%). The phrase "any and all recoveries" means the gross amount of recoveries without deduction for expenses. The phrase "any and all recoveries" is to be construed broadly to include, but not be limited to, settlement checks, checks in satisfaction of a judgment, any beneficial interest in stock, property, assets, debt forgiveness or any other non-monetary remuneration obtained by Client in settlement or by judicial decree. However, the phrase "any and all recoveries" shall not be construed to include money that the Client has already received from the insurance carrier prior to the date of execution of this Contract.**

4. The fees set forth above shall be computed and figured from the gross amount recovered for Client in the case. The Client acknowledges that the fee described in this section is a reasonable contingent fee for Attorneys' services. The Client acknowledges that the Attorneys have discussed with the Client the fee described herein and have explained its implication. The Client acknowledges that the Client has accepted the fee terms described in this Contract.

5. The Attorneys will advance necessary and reasonable expenses that they deem necessary in the investigation, presentation, prosecution, and trial of the claim. **If any expenses are advanced by the Attorneys, such expenses will be repaid to them after the calculation and/or payment of any Attorneys' fees.** Expenses include, but are not limited to, filing fees, costs of court, courier service, expert witness fees, deposition transcript fees, copy charges by a third party, mailing charges, fax charges, travel

and meal expenses, research costs, and computer and hard-copy data handling charges incurred for the purposes of prosecuting the claims of the Client herein.

**6. IF NO RECOVERY IS MADE, NO REPAYMENT OF ADVANCED LITIGATION EXPENSES WILL BE REQUIRED.**

7. The Attorneys will not compromise or settle the Client's claims without the consent of the Client.

8. The Attorneys have informed the Client that there can be no guarantee of success, recovery or the amount of any recovery. No one can accurately predict the outcome of the case.

9. The Client hereby grants the Firm a complete and general power of attorney to execute all documents connected with the claims, including, but not limited to, contracts, settlement checks, settlement agreements, compromises and releases, dismissals, judgments, orders and all other documents. By signing this agreement, Client specifically authorizes Attorneys to endorse, on behalf of Client and/or Attorneys, any drafts or checks in settlement of the Client's claim after the Client has approved the settlement. The Client shall keep the Attorneys advised of the client's address and shall appear on reasonable notice at any and all depositions and hearings and shall comply with all reasonable requests of the Attorneys.

10. The order of distribution of recoveries, if any, in this case, will be as follows: (1) Attorney fees calculated upon the gross recoveries shall be paid first to the Attorneys out of any recoveries in the case; (2) all expenses paid by Attorneys will be repaid second to the Attorneys out of any recoveries in the case; (3) the remaining portion of the recoveries will be paid third and last to the Client. Example: For demonstrative purposes only, consider the scenario in which Attorneys and Client recover a total of $100,000 from defendant(s) in the matter. Attorneys have incurred and/or paid $5,000 in expenses in the case. The funds will be disbursement as follows: Attorneys will first be paid attorney fees of 40% x $100,000, which amount equals $40,000. Second, Attorneys will be paid back the expenses incurred and/or paid by Attorneys in the case in the amount of $5,000. Third, Client's portion will be the remainder of the recoveries of $100,000 - $40,000 - $5,000 = $55,000.

11. The Client understands and agrees that the Firm will keep the Client reasonably informed of the litigation.

12. The Client represents that Client is the full owner of the claims and matters for which it has engaged the Firm; that such Client has full authority without encumbrance to prosecute same and to enter into this contract of employment.

13. This Contract shall be binding upon and inure to the benefit of the Client and Firm and their respective heirs, executors, administrators, legal representatives, successors and assigns. In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. This Contract shall be governed by Texas law. This Contract constitutes the sole and only Contract of the parties hereto and supersedes any prior understandings or written or oral agreement between the parties respecting the subject matter herein.

14. Client understands that it takes several years to resolve some cases while others may be resolved in a relatively short time period. Client further understands that there may be periods of actual or apparent inactivity in any case, not matter how diligently prosecuted. Client understands that neither the length of time it takes to resolve a case nor the mere existence of period of actual or apparent inactivity will affect the financing provisions of this agreement.

**Notice to Client: The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. In the event the Client has a complaint against or a dispute with Attorneys, the Client may contact the State Bar Office of General Counsel to obtain information about how to file a complaint. The State Bar Office of General Counsel may be reached at 1-800-932-1900, which is a toll-free number.**

I certify and acknowledge that I have had the opportunity to read this Contract. I further state that I have voluntarily entered into this Contract fully aware of its terms and conditions.

SIGNED and ACCEPTED

Client(s):

Signature: ______________________ Date: 8/13/2020

**APPROVED AND ACCEPTED:**

**NOHAYIA JAVED**
**ATTORNEY AT LAW**

______________________________

**By: NOHAYIA JAVED**

## CONTINGENT FEE CONTRACT AND POWER OF ATTORNEY

This agreement is made between ("Client") with name, address and contact information below:

Name: [redacted]

Addresses : [redacted]

Email Address: [redacted] Phone: [redacted]1810

and

Nohayia Javed ("Attorneys").

1. Client retains Attorneys to represent Client's interests in prosecuting Client's claim for damages and insurance proceeds against one or more parties, including but not limited to Client's insurance company, arising out of property damages to Client's property that is located at:

[redacted]

2. Client agrees Attorneys shall have a reasonable amount of time (at least 30 days) from the Attorney's receipt of the signed contract with all supporting documents on the claim to evaluate the merits of the claim. Supporting documents required are the insurance policy in effect at the time of the damages at issue and all claim documents (estimates by insurance company and correspondence regarding the claim). Attorneys, in their sole discretion, will then determine whether or not Attorneys will accept the case. **Attorneys will accept the case only by signing this Power of Attorney and Contingent Fee Contract ("the Contract").** Attorneys will send a fully executed copy to Client after signing the Contract. In the event Attorneys do not choose to accept the case, Client will be notified, and any attorney-client relationship will thereby be terminated.

**3. Client has agreed to compensate Attorneys on a contingent fee basis. Client hereby assigns to Attorneys a Twenty Percent (20%) Interest if the case is resolved Prelitigation. If the case proceeds to appraisal, arbitration or Litigation, the Client hereby assigned an additional Twenty Percent (20%) for a total of Forty Precent 40% in any and all recoveries obtained in this matter, from any source. The phrase "any and all recoveries" means the gross amount of recoveries without deduction for expenses. The phrase "any and all recoveries" is to be construed broadly to include, but not be limited to, settlement checks, checks in satisfaction of a judgment, any beneficial interest in stock, property, assets, debt forgiveness or any other non-monetary remuneration obtained by Client in settlement or by judicial decree. However, the phrase "any and all recoveries" shall not be construed to include money that the Client has already received from the insurance carrier prior to the date of execution of this Contract.**

4. The fees set forth above shall be computed and figured from the gross amount recovered for Client in the case. The Client acknowledges that the fee described in this section is a reasonable contingent fee for Attorneys' services. The Client acknowledges that the Attorneys have discussed with the Client the fee described herein and have explained its implication. The Client acknowledges that the Client has accepted the fee terms described in this Contract.

5. The Attorneys will advance necessary and reasonable expenses that they deem necessary in the investigation, presentation, prosecution, and trial of the claim. Expenses include, but are not limited to, filing fees, costs of court, courier service, expert witness fees, deposition transcript fees, copy charges by a third party, mailing charges, fax charges, travel and meal expenses, research costs, and computer and hard-copy data handling charges incurred for the purposes of prosecuting the claims of the Client herein.

**6. IF NO RECOVERY IS MADE, NO REPAYMENT OF ADVANCED LITIGATION EXPENSES WILL BE REQUIRED.**

7. The Attorneys will not compromise or settle the Client's claims without the consent of the Client.

8. The Attorneys have informed the Client that there can be no guarantee of success, recovery or the amount of any recovery. No one can accurately predict the outcome of the case.

9. The Client hereby grants the Firm a complete and general power of attorney to execute all documents connected with the claims, including, but not limited to, contracts, settlement checks, settlement agreements, compromises and releases, dismissals, judgments, orders and all other documents. By signing this agreement, Client specifically authorizes Attorneys to endorse, on behalf of Client and/or Attorneys, any drafts or checks in settlement of the Client's claim after the Client has approved the settlement. The Client shall keep the Attorneys advised of the client's address and shall appear on reasonable notice at any and all depositions and hearings and shall comply with all reasonable requests of the Attorneys.

10. The order of distribution of recoveries, if any, in this case, will be as follows: (1) Attorney fees calculated upon the gross recoveries shall be paid first to the Attorneys out of any recoveries in the case; (2) the remaining portion of the recoveries will be paid third and last to the Client. Example: For demonstrative purposes only, consider the scenario in which Attorneys and Client recover a total of $100,000 from defendant(s) in the matter. Attorneys have incurred and/or paid $5,000 in expenses in the case. The funds will be disbursement as follows: Attorneys will first be paid attorney fees of 39% x $100,000, which amount equals $39,000. Client's portion will be the remainder of the recoveries of $100,000 - $39,000 (the $5,000 of case expenses are included within the attorney fees) = $61,000.

11. The Client understands and agrees that the Firm will keep the Client reasonably informed of the litigation.

12. The Client represents that Client is the full owner of the claims and matters for which it has engaged the Firm; that such Client has full authority without encumbrance to prosecute same and to enter into this contract of employment.

13. This Contract shall be binding upon and inure to the benefit of the Client and Firm and their respective heirs, executors, administrators, legal representatives, successors and assigns. In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. This Contract shall be governed by Texas law. This Contract constitutes the sole and only Contract of the parties hereto and supersedes any prior understandings or written or oral agreement between the parties respecting the subject matter herein.

14. Client understands that it takes several years to resolve some cases while others may be resolved in a relatively short time period. Client further understands that there may be periods of actual or apparent inactivity in any case, not matter how diligently prosecuted. Client understands that neither the length of time it takes to resolve a case nor the mere existence of period of actual or apparent inactivity will affect the financing provisions of this agreement.

**Notice to Client: The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. In the event the Client has a complaint against or a dispute with Attorneys, the Client may contact the State Bar Office of General Counsel to obtain information about how to file a complaint. The State Bar Office of General Counsel may be reached at 1-800-932-1900, which is a toll-free number.**

I certify and acknowledge that I have had the opportunity to read this Contract. I further state that I have voluntarily entered into this Contract fully aware of its terms and conditions.

SIGNED and ACCEPTED

Client(s):

DocuSigned by:

Signature: ______________________ Date: 1/28/2022

**APPROVED AND ACCEPTED:**

**NOHAYIA JAVED**
**Attorney at Law**

______________________________

**By: NOHAYIA JAVED**

# EXHIBIT “4”

RECORDING REQUESTED BY:
PRESTIGE DEFAULT SERVICES, LLC

AND WHEN RECORDED TO:
**OG elko LP**
**9685 Via Excelencia Ste. 208**
**San Diego, CA 92126**

**Forward Tax Statements to**
**the address given above**

---

SPACE ABOVE LINE FOR RECORDER'S USE

A.P.N.: 001-560-089 T.S. # **19-3259**

**The undersigned hereby affirms that there is no Social Security number contained in this document.**

# TRUSTEE'S DEED UPON SALE

Transfer Tax: **$5,656.95**
The Grantee Herein **was not** the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **$8,382,315.17**
The Amount Paid by the Grantee was **$2,901,000.00**
Said Property is in the City of **ELKO**, County of **Elko**

**PRESTIGE DEFAULT SERVICES, LLC,** as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**OG elko LP**

(herein called Grantee) but without covenant or warranty, expressed or implied, all rights, title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Elko**, State of Nevada, described as follows:

**SEE ATTACHED EXHIBIT "A"**

**PROPERTY AKA 3019 IDAHO ST., ELKO, NV 89801**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **CHARM HOSPITALITY LLC, A NEVADA LIMITED LIABILITY COMPANY** as Trustor, dated **9/7/2016** of the Official Records in the office of the Recorder of **Elko**, Nevada under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on **9/28/2016**, instrument number **716309** of official records. Trustee having complied with all applicable statutory requirements of the State of Nevada and performed all duties required by the Deed of Trust including sending a Notice of Breach and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified return receipt mail, postage pre-paid to each person entitled to notice in compliance with Nevada Civil Code 107.050

# TRUSTEE'S DEED UPON SALE

T.S. #: **19-3259**

All requirements per Nevada Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **6/8/2022**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being $ **$2,901,000.00**, in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, PRESTIGE DEFAULT SERVICES, LLC, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: 6-14-22

**PRESTIGE DEFAULT SERVICES, LLC**

[signature]

Briana Young, Trustee Sale Officer

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

**State of California} ss**
**County of Orange}**

On 6/14/2022 before me, Merna Wessa Notary Public, personally appeared **Briana Young** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature [signature] (Seal)

MERNA WESSA
Notary Public - California
Orange County
Commission # 2395476
My Comm. Expires Mar 2, 2026

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

The land referred to herein is situated in the State of Nevada, County of Elko, described as follows:

Parcel 2 as shown on that certain Parcel Map for McClaskey Elko Holiday Inn, LLC filed in the Office of the County Recorder of Elko County, State of Nevada, on November 30, 2004, as File No. 527695, being a portion of Section 11, Township 34 North, Range 55 East, M.D.B.&M.,

Said Parcel is further described as follows

A Parcel of land located in Section 11, Township 34 North, Range 55 East. M.D.B.&M., City of Elko, Nevada, being Parcel No. 2, as shown on the Parcel Map for McClaskey Elko Holiday Inn, LLC, on file in the Office of the Elko County Recorder, Elko, Nevada, as File No. 527695. more particularly described as follows:

Commencing at the center 1/4 corner of said Section 11, thence North 22°50'20" East, 1631.07 feet, to a point being the most Southerly corner of Parcel No. 1, as shown on said Parcel Map for McClaskey Elko Holiday Inn, LLC;

Thence North 31°26'07" East, 487.86 feet, along the Southeasterly line of said Parcel No. 1 a point being the most Southerly corner of said Parcel No. 2, as shown on the Parcel Map for McClaskey Elko Holiday Inn, LLC, the true point of beginning;

Thence continuing North 31°26'07" East, 253.14 feet, along the Southeasterly line of said Parcel No. 2, to Corner No. 2, a point being the most Easterly corner of said Parcel No. 2;

Thence North 58°33'50" West 314.31 feet, along the Northeasterly line of said Parcel No. 2, to Corner No. 3, a point being the most Northerly corner of said Parcel No. 2;

Thence South 38°59'14" West, 354.02 feet, along the Northwesterly line of said Parcel No. 2, to Corner No. 4, a point being the most Westerly corner of said Parcel No. 2;

Thence South 45°35'07" East, 40.01 feet, along the Southwesterly line of said Parcel No. 2, to Corner No. 5;

Thence North 46°28'38" East, 42.09 feet, along the Southerly line of said Parcel No. 2, to Corner No. 6;

Thence from a tangent bearing North 46°28'38" East, on a circular curve to the right, with a radius of 180.00 feet, through a central angle of 50°34'25", for an arc length of 158.88 feet, along the said Southerly line of Parcel No. 2, to Corner No. 7;

Thence South 06°54'04" West, 29.82 feet, along the said Southerly line of Parcel No. 2, to Corner No, 8;

Thence South 57°01'11" East, 46.31 feet, along the said Southerly line of Parcel No. 2, to Corner No. 9;

Thence South 06°54'04" West, 20.69 feet, along the said Southerly line of Parcel No. 2, to Corner No. 10;

Thence South 57°01'11" East, 144.19 feet, along the said Southerly line of Parcel No. 2, to Corner No. 1, the Point of Beginning.

Excepting Therefrom an undivided one-half interest in and to all minerals and mineral rights, including gas, petroleum and the products thereof, as reserved in deed from the Estate of Joseph Jefferson Henderson, deceased, recorded July 23, 1952, in Book 61, Page 488, Deed Records, Elko County, Nevada.

EXHIBIT "A"
LEGAL DESCRIPTION

The land referred to herein is situated in the State of Nevada, County of Elko, described as follows:

Parcel 2 as shown on that certain Parcel Map for McClaskey Elko Holiday Inn, LLC filed in the Office of the County Recorder of Elko County, State of Nevada, on November 30, 2004, as File No. 527695, being a portion of Section 11, Township 34 North, Range 55 East, M.D.B.&M.,

Said Parcel is further described as follows

A Parcel of land located in Section 11, Township 34 North, Range 55 East. M.D.B.&M., City of Elko, Nevada, being Parcel No. 2, as shown on the Parcel Map for McClaskey Elko Holiday Inn, LLC, on file in the Office of the Elko County Recorder, Elko, Nevada, as File No. 527695. more particularly described as follows:

Commencing at the center 1/4 corner of said Section 11, thence North 22°50'20" East, 1631.07 feet, to a point being the most Southerly corner of Parcel No. 1, as shown on said Parcel Map for McClaskey Elko Holiday Inn, LLC;

Thence North 31°26'07" East, 487.86 feet, along the Southeasterly line of said Parcel No. 1 a point being the most Southerly corner of said Parcel No. 2, as shown on the Parcel Map for McClaskey Elko Holiday Inn, LLC, the true point of beginning;

Thence continuing North 31°26'07" East, 253.14 feet, along the Southeasterly line of said Parcel No. 2, to Corner No. 2, a point being the most Easterly corner of said Parcel No. 2;

Thence North 58°33'50" West 314.31 feet, along the Northeasterly line of said Parcel No. 2, to Corner No. 3, a point being the most Northerly corner of said Parcel No. 2;

Thence South 38°59'14" West, 354.02 feet, along the Northwesterly line of said Parcel No. 2, to Corner No. 4, a point being the most Westerly corner of said Parcel No. 2;

Thence South 45°35'07" East, 40.01 feet, along the Southwesterly line of said Parcel No. 2, to Corner No. 5;

Thence North 46°28'38" East, 42.09 feet, along the Southerly line of said Parcel No. 2, to Corner No. 6;

Thence from a tangent bearing North 46°28'38" East, on a circular curve to the right, with a radius of 180.00 feet, through a central angle of 50°34'25", for an arc length of 158.88 feet, along the said Southerly line of Parcel No. 2, to Corner No. 7;

Thence South 06°54'04" West, 29.82 feet, along the said Southerly line of Parcel No. 2, to Corner No, 8;

Thence South 57°01'11" East, 46.31 feet, along the said Southerly line of Parcel No. 2, to Corner No. 9;

Thence South 06°54'04" West, 20.69 feet, along the said Southerly line of Parcel No. 2, to Corner No. 10;

Thence South 57°01'11" East, 144.19 feet, along the said Southerly line of Parcel No. 2, to Corner No. 1, the Point of Beginning.

Excepting Therefrom an undivided one-half interest in and to all minerals and mineral rights, including gas, petroleum and the products thereof, as reserved in deed from the Estate of Joseph Jefferson Henderson, deceased, recorded July 23, 1952, in Book 61, Page 488, Deed Records, Elko County, Nevada.

STATE OF NEVADA
DECLARATION OF VALUE FORM

1. Assessor Parcel Number(s)
   a) 001-560-089
   b) ____
   c) ____
   d) ____
2. Type of Property:
   a) ☐ Vacant Land b) ☐ Single Fam. Res.
   c) ☐ Condo/Twnhse d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural h) ☐ Mobile Home
   ☐ Other ____

FOR RECORDER'S OPTIONAL USE ONLY
Book: ____ Page: ____
Date of Recording: ____
Notes:

3. Total Value/Sales Price of Property $ $8,382,315.17
   Deed in Lieu of Foreclosure Only (value of property) ( ____ )
   Transfer Tax Value: $ ____
   Real Property Transfer Tax Due $ ____

**4. If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section ____
   b. Explain Reason for Exemption: ____

5. Partial Interest: Percentage being transferred: ____ %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature ____ Capacity ____

Signature ____ Capacity ____

**SELLER (GRANTOR) INFORMATION (REQUIRED)**
Print Name: ____
Address: ____
City: ____
State: ____ Zip: ____

**BUYER (GRANTEE) INFORMATION (REQUIRED)**
Print Name: ____
Address: ____
City: ____
State: ____ Zip: ____

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name: ____ Escrow #: ____
Address: ____
City: ____ State: ____ Zip: ____

**AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED**

# EXHIBIT "5"

Mick,

My website is under maintenance and should be up in a few days.

I can send my resume to you if you'd like. I'm unsure what bio information you would like. I'm happy to provide whatever you prefer.

On Apr 6, 2022, at 1:21 PM, Jagmohan Dhillon <jag@galaxyhotelsgroup.com> wrote:

Carrie will be there to show ard

---

**From:** Mick Crawford <mcrawford@westtownbank.com>
**Date:** Wednesday, April 6, 2022 at 2:18 PM
**To:** Jagmohan Dhillon <jag@galaxyhotelsgroup.com>, Attoney Insurance Nohayia Javed <Attorneyjaved@gmail.com>
**Cc:** Michael R. Brooks <mbrooks@hutchlegal.com>
**Subject:** Appraiser Onsite-4.7.2022 9AM

Jag-Please be sure for you or someone in your place is there onsite to meet the appraiser tomorrow. She will be there tomorrow at 9AM. It is imperative that you be there to meet her so she can complete the site visit. Your cooperation will only help Charm and Ms. Kaur in the future as we all try to preserve the property.

Nohayia-I received your retainer and I am having legal review. Also I still need your resume and the information about the firm I could not find anything online. Please direct me to your website.

Thanks,

Mick

**Mick Crawford |** SVP / Credit Manager

**West Town Bank & Trust**

Direct 919.741.4397 | Cell 803.608.5365 | Fax 919.948.1989

8450 Falls of Neuse Road, Suite 202 | Raleigh, NC 27615

www.westtownbank.com

<image001.png>

# EXHIBIT “6”

**CONTINGENT FEE CONTRACT AND POWER OF ATTORNEY**

This agreement is made between ("Client") with name, address and contact information below:

Name: CHARM HOSPITALITY, LLC dba WINGATE BY WYNDHAM ELKO

Address: 3019 E. IDAHO STREET ELKO, NV 89801

Email: MCRAWFORD@WESTTOWNBANK.COM Phone: 919-741-4397

Email: JAG@GALAXYHOTELSGROUP.COM Phone: 775-250-1810

and

Nohayia Javed ("Attorneys").

1. Client retains Attorneys to represent Client's interests in prosecuting Client's claim for damages and insurance proceeds against one or more parties, including but not limited to Client's insurance company, arising out of property damage to Client's property that is located at: 3019 E. IDAHO STREET ELKO, NV 89801 (the "Matter")

2. Client agrees Attorneys shall have a reasonable amount of time (at least 30 days) from the Attorney's receipt of the signed contract with all supporting documents on the claim to evaluate the merits of the claim. Supporting documents required are the insurance policy in effect at the time of the damages at issue and all claim documents (estimates by insurance company and correspondence regarding the claim). Attorneys, in their sole discretion, will then determine whether or not Attorneys will accept the case. **Attorneys will accept the case only by signing this Power of Attorney and Contingent Fee Contract ("the Contract").** Attorneys will send a fully executed copy to Client after signing the Contract. In the event Attorneys do not choose to accept the case, Client will be notified, and any attorney-client relationship will thereby be terminated.

**3. JOINT REPRESENTATION CONFLICT WAIVER**

Jagmohan Dhillon, on behalf of Charm Hospitality, LLC dba Wingate by Wyndham Elko, and West Town Bank & Trust have asked the Javed Law Firm, PLLC (the "Firm") to jointly represent them in connection with a property damage claim for water loss and ensuing damage to the building, business personal property and business income loss at the Wingate by Wyndham Hotel located in Elko, Nevada. Given that neither they nor we have as of yet detected a basis for a conflict, we would be pleased to agree to do so subject to the following understandings.

Although the interests of both parties in this matter are generally consistent, you both acknowledge that you recognize and understand that differences may exist or become evident during the course of our representation. Notwithstanding these possibilities, the two of you have determined that it is in your individual and mutual interests to have a single law firm represent you jointly in connection with this matter.

Accordingly, this confirms your mutual agreement to have us represent you jointly in connection with the above-described matter. This will also confirm that you both have each agreed to waive any conflict of interest arising out of, and that you will not object to, our representation of each of you in the matter described herein. Therefore, you hereby state that you prefer that the Javed Law Firm, PLLC jointly represent you in this matter.

**4. DISTRIBUTION OF FUNDS BETWEEN CLIENTS**

This case arises out of property damage that occurred to the above-referenced subject building and business and all efforts for recovery are made for that loss. West Town Bank & Trust foreclosed on the property during the pendency of this claim and the insured, Charm Hospitality, LLC dba Wingate by Wyndham Elko, is in deficiency to West Town Bank. Therefore, after payment of attorney's fees and case expenses, all recoveries made in this case will be distributed as such:

1. Payment of expenses incurred by West Town Bank & Trust in the foreclosure and related legal proceedings
2. Curtailment of the principal balance of the loan
3. Accrued interest, fees and costs
4. Any remaining funds shall be payable to Charm Hospitality, LLC

**5. COOPERATION OF PARTIES**

West Town Bank & Trust expects full cooperation from Charm Hospitality, LLC in the ongoing claim process, pending litigation and any other legal actions that may arise from the property damage claim. As both parties have the same end goal to recover monies from the insurance company to pay for damages to the property arising out of the claim, full cooperation is needed and expected to achieve that goal. In addition, as any recovery will also reduce the deficiency balance owned by the borrower/guarantor/insured that the party is ultimately liable for, the purpose of retaining the Javed Law Firm, PLLC as co-clients shall achieve that goal.

6. **Client has agreed to compensate Attorneys on a contingent fee basis. Client hereby assigns to the Attorney the following Interest in any and all recoveries obtained in this Matter, from any source, in the following percentages:**
**Thirty Percent (30%) if the case is resolved prior to suit being filed, commonly referred to as Prelitigation;**
**Thirty-three and a Third Percent (33.33%) if the case is resolved any time after the lawsuit is filed in state or federal court;**
**or Forty Percent (40%) if the case proceeds to Trial.**
**The phrase "any and all recoveries" means the gross amount of recoveries without deduction for expenses. The phrase "any and all recoveries" is to be construed broadly to include, but not be limited to, settlement checks, checks in satisfaction of a judgment and/or any other monetary award obtained by Client in settlement or by judicial decree in relation to the Matter. However, the phrase "any and all recoveries" shall not be construed to include: (a) money that the Client has already received from the insurance carrier prior to the date of execution of this Contract; (b) recovery of any other assets not related to this Matter and/or in which the Firm is not assisting in the recovery thereof; and (3) any deficiency amount (and the recovery thereof) from Charm Hospitality, LLC (and its related guarantors) in conjunction with its loan(s) from West Town Bank & Trust.**

7. The fees set forth above shall be computed and figured from the gross amount recovered for Client in the case. The Client acknowledges that the fee described in this section is a reasonable contingent fee for Attorneys 'services. The Client acknowledges that the Attorneys have discussed with the Client the fee described herein and have explained its implication. The Client acknowledges that the Client has accepted the fee terms described in this Contract.

8. The Attorneys will advance necessary and reasonable expenses that they deem necessary in the investigation, presentation, prosecution, and trial of the claim. **If any expenses are advanced by the Attorneys, such expenses shall be reimbursed from the final settlement or verdict in the case.**

Expenses include, but are not limited to, filing fees, costs of court, courier service, expert witness fees, local counsel expenses, deposition transcript fees, copy charges by a third party, mailing charges, fax charges, travel and meal expenses, research costs, and computer and hard-copy data handling charges incurred for the purposes of prosecuting the claims of the Client herein.

9. **IF NO RECOVERY IS MADE, NO REPAYMENT OF ADVANCED LITIGATION EXPENSES AND NO ATTORNEY'S FEES WILL BE REQUIRED.**

10. The Attorneys will not compromise or settle the Client's claims without the consent of the Client.

11. The Attorneys have informed the Client that there can be no guarantee of success, recovery or the amount of any recovery. No one can accurately predict the outcome of the case.

12. The Client hereby grants the Firm a complete and general power of attorney to execute all documents connected with the claims, including, but not limited to, contracts, settlement checks, settlement agreements, compromises and releases, dismissals, judgments, orders and all other documents. By signing this agreement, Client specifically authorizes Attorneys to endorse, on behalf of Client and/or Attorneys, any drafts or checks in settlement of the Client's claim after the Client has approved the settlement. The Client shall keep the Attorneys advised of the client's address and shall appear on reasonable notice at any and all depositions and hearings and shall comply with all reasonable requests of the Attorneys.

13. The order of distribution of recoveries, if any, in this case, will be as follows: (1) Attorney fees calculated upon the gross recoveries shall be paid first to the Attorneys out of any recoveries in the case; (2) all expenses paid by Attorneys will be repaid second to the Attorneys out of any recoveries in the case; (3) the remaining portion of the recoveries will be paid third and last to the Client as described in Section 4.

14. The Client understands and agrees that the Firm will keep the Client reasonably informed of the litigation.

15. The Client represents that Client is the full owner of the claims and matters for which it has engaged the Firm; that such Client has full authority without encumbrance to prosecute same and to enter into this contract of employment.

16. This Contract shall be binding upon and inure to the benefit of the Client and Firm and their respective heirs, executors, administrators, legal representatives, successors and assigns. In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. This Contract shall be governed by Texas law. This Contract constitutes the sole and only Contract of the parties hereto and supersedes any prior understandings or written or oral agreement between the parties respecting the subject matter herein.

17. Client understands that it takes several years to resolve some cases while others may be resolved in a relatively short time period. Client further understands that there may be periods of actual or apparent inactivity in any case, not matter how diligently prosecuted. Client understands that neither the length of time it takes to resolve a case nor the mere existence of period of actual or apparent inactivity will affect the financing provisions of this agreement.

**Notice to Client:** **The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. In the event the Client has a complaint against or a dispute with Attorneys, the Client may contact the State Bar Office of General Counsel to obtain information about how to file a complaint. The State Bar Office of General Counsel may be reached at 1-800-932-1900, which is a toll-free number.**

I certify and acknowledge that I have had the opportunity to read this Contract. I further state that I have voluntarily entered into this Contract fully aware of its terms and conditions.

SIGNED and ACCEPTED

Client(s):

DocuSigned by:

Signature: Jagmohan Dhillon
253225BF92BB49C... Date: 8/9/2022

Charm Hospitality, LLC Authorized Representative

Signature: Michael T. Crawford Digitally signed by Michael T. Crawford Date: 2022.07.29 15:00:51 -04'00' Date: 7/29/2022

West Town Bank & Trust Authorized Representative

**APPROVED AND ACCEPTED:**

DocuSigned by:

NOHAYIA JAVED
53904FC6692F4CD... 8/9/2022

**By: NOHAYIA JAVED**
**ATTORNEY AT LAW**

# EXHIBIT "7"

Nohayia Javed, Esq. *(Pro Hac Vice)*
Dan Simmonds, Esq. (*Pro Hac Vice*)
Javed Law Firm, PLLC
3019 Spider Lily
San Antonio, TX 78258
Telephone No.: (832) 360-0476
attorney@javedlawfirm.com
dsimmonds@javedlawfirm.com
Attorneys for Plaintiff
*Charm Hospitality LLC*

Richard D. Williamson, Esq. (NV Bar No. 9932)
Briana N. Collings, Esq. (NV Bar No. 14694)
Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno, Nevada 89501
Telephone No.: (775) 329-5600
rich@nvlawyers.com
Briana@nvlawyers.com
Local Counsel for Plaintiff
*Charm Hospitality LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARM HOSPITALITY LLC D/B/A WINGATE BY WYNDHAM ELKO<br><br>Plaintiffs,<br><br>vs.<br><br>GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA,<br><br>Defendants. | Case Number: 2:23-cv-00228-RFB-BNW |

**MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff Charm Hospitality, LLC ("Plaintiff" or "Charm"), by and through its attorneys of record, The Javed Law Firm, PLLC and Robertson, Johnson, Miller & Williamson and files this Motion for Leave to File First Amended Complaint ("Motion"). This Motion is based upon the below memorandum of points and authorities, all exhibits attached thereto, all papers and pleadings on file herein, and any oral argument the Court desires to hear.

//

//

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Charm respectfully requests leave of this Court to file a First Amended Complaint. Over the course of this litigation, Charm filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Nevada. West Town Bank and Trust ("Bank") was Charm's mortgagor for Charm's purchase of that property located at 3019 Idaho St. in Elko, Nevada 89801 (the "Property")—the property whose damage is the subject of this litigation. Bank was also named as a loss payee under Defendant's insurance policy no. 41510-000345-02 at issue in this action (the "Policy"). Accordingly, Bank must be added as a plaintiff in this matter to protect its interest as a loss payee under the Policy and its right thereunder.

**II. FACTUAL BACKGROUND**

When Charm entered into the Policy, and its contractual relationship with Defendant, Bank was listed as a loss payee. (Ex. 1, Loss Payee Page.)

On November 27, 2019, Bank sent Charm a Notice of Default and Intent to Accelerate the mortgage note on the Property at issue in this case. (Ex. 2, Notice of Default & Intent to Accelerate.) Following the commencement of this action, Charm filed a Bankruptcy Petition in the United States Bankruptcy Court for the District of Nevada. This case was eventually dismissed with no bankruptcy trustee taking control over the Property. Bank ultimately foreclosed on the Property, and sold the Property to a third party at the foreclosure sale on June 22, 2022, for a significantly reduced price. (Ex. 3, Trustee's Deed Upon Sale.) The foreclosure sale followed the initiation of this litigation, thereby causing Bank's claim against Defendant to ripen after the initiation of this litigation.

Moreover, Bank is just as much in privity of contract with Defendant as Charm, given Bank's status as a loss payee under the Policy. See, e.g., Big-D Const. Corp. v. Take it for Granite Too, 917 F.Supp.2d 1096 (D. Nev. 2013) (where an additional insured sought declaratory judgment that it had a right to a defense by the insurer); see also Certain Underwriters at Lloyd's London v. Witham, 139 F.Supp.3d 1367 (M.D. Georgia 2015) (Georgia law provides that additional insured clause creates a separate contract between the insurer and

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

additional insured). Thus, Bank also has an interest in this litigation by virtue of its status as an loss payee under the Policy.

Accordingly, now that Bank's claims against Defendant and its interests in Charm's claims against Defendant have ripened, Bank must be added as a plaintiff. Charm requests this Court grant Charm leave to amend the Complaint accordingly.

## III. LEGAL STANDARD

Subsequent to a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The determination of whether to grant leave to amend lies "within the sound discretion of the trial court," and is guided by the underlying purpose of Rule 15: to "facilitate a decision on the merits rather than on the pleadings or technicalities." DCD Programs, Ltd. v. U.S., 833 F.2d 183, 185 (9th Cir. 1987); U.S. v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Courts must carefully heed the command of Rule 15 by freely granting leave to amend when justice so requires. DCD Programs, Ltd., 833 F.2d at 186; see also Foman v. Davis, 371 U.S. 178, 182 (1962). Rule 15's policy of favoring amendments is applied in the Ninth Circuit with "extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001).

## IV. ARGUMENT

### A. Bank is a Proper Party to This Litigation

As discussed above, Bank foreclosed upon and sold the Property at a foreclosure sale at a significant loss due to the substantial damage to the Property. Bank similarly is listed as a loss payee in the Policy—giving Bank the right to recover from Defendant for Defendant's mishandling of the claim for the damage to the Property. Indeed, Bank's collateral for its mortgage granted to Charm was substantially devalued as a result of Defendant's failure and refusal to render a proper payout for the water damage incurred at the Property. Bank therefore has an interest in this litigation to the extent Bank was forced to sell the Property at auction for far less than the outstanding mortgage amount in light of the substantial non-remediated water damage. (See Ex. 3 at 1, showing $8,382,315.17 in unpaid debt compared to the sale price of

Robertson, Johnson, Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

$2,901,000.00.) This loss is largely, if not solely, attributable to Defendant's misconduct at issue in this litigation.

A proposed amendment is only futile if there is no set of facts that can be proven under the amended pleadings that would constitute a valid or sufficient claim or defense. Doe v. Nevada, 356 F.Supp.2d 1125, 1125 (D. Nev. 2004). Bank has proper standing as a loss payee under the Policy to join in the claims relating to the Property in this matter. Thus, amending the complaint to add Bank as a plaintiff is not futile, but instead is proper.

**B. There is No Prejudice to Defendant by Allowing Bank to Join as a Plaintiff**

Despite this case being filed by Charm in February this year, hardly any party discovery has been completed. The parties have exchanged one set of written discovery and Defendant has served a variety of third-party subpoenas. Among these third parties who were subpoenaed is the Bank. Bank has complied with this subpoena duces tecum and produced over eight hundred (800) pages of responsive documents to Defendant already. (Ex. 4, Bank Response to Subpoena.) Moreover, discovery does not close in this matter until January 18, 2024—just under four (4) months from the filing of this Motion. (Stipulated Discovery Plan and Scheduling Order—Special Scheduling Review Requested, filed June 23, 2023, Doc. 15, at 2:4-6.) There are thus no discovery-related prejudices presented by adding Bank to this matter.

Similarly, Bank will simply be joining the claims against Defendant that have already been brought by Charm. Stated another way, Bank will not bring any new claims herein. Defendant is thus not required to augment its defense to include any new claims. Accordingly, there is no prejudice to Defendant in this regard either.

Defendant cannot assert any plausible argument precluding the addition of Bank to this action following the foreclosure on and sale of the Property. Furthermore, Defendant will not be prejudiced by Charm's addition of Bank as a plaintiff here for the reasons set forth above.[1]

[1] Defendant is aware of the foreclosure and Bank's interest in the Property as its local counsel represented Bank against Charm in Charm's bankruptcy and in foreclosing upon the Property. (See Ex. 5, Bankruptcy Docket at 5, Doc. 61 where Defendant's local counsel represents Bank against Charm; Ex. 6, Foreclosure Matter Filing, same.)

**C. <u>Charm Brought This Motion Without Delay and Granting the Motion Will Not Cause any Undue Delay</u>**

To evaluate undue delay, a court must inquire into whether the moving party knew or should have known the facts and theories raised by the amendment in the original history. <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946, 954 (9th Cir. 2006). Certainly, Charm could not have been aware of Bank's interest here as it had not yet foreclosed or sold the Property when the complaint was initially filed in February 2023. Once the Property was foreclosed upon and thereafter sold, in June 2023, Charm began investigating whether Bank should be added as a party to this action.

After Charm concluded Bank was a necessary party to this litigation, Charm promptly sought a stipulation to amend the complaint accordingly. This stipulation never came to fruition, thus requiring Charm to file this Motion. This Motion has been filed without delay after Charm's discovery of Bank's interest and confirmation that Bank should be a plaintiff.

Similarly, for the reasons set forth in the immediately preceding section, addition of Bank as a plaintiff will not cause any undue delay in this matter. Bank and Charm will pursue the same claims against Defendant and seek the same or similar damages under largely the same legal theories. There is also substantial time remaining to complete discovery, providing ample opportunity for Bank to conduct any desired discovery and for Defendant to do the same.

## IV. CONCLUSION

For the reasons stated herein, Charm respectfully requests the Court grant this Motion and enter the First Amended Complaint in the form attached as Exhibit 7.

DATED this 20th day of October, 2023.

JAVED LAW FIRM, PLLC

*And*

ROBERTSON, JOHNSON,
MILLER & WILLIAMSON
By: */s/ Briana N. Collings*
Richard D. Williamson, Esq.
Briana N. Collings, Esq.
*Attorneys for Plaintiffs*

Robertson, Johnson, Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

Case [illegible] 62 of 84

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 20th day of October, 2023.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Teresa W. Stovak*
An Employee of Robertson, Johnson, Miller & Williamson

Robertson, Johnson, Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT
PAGE 6

**EXHIBIT INDEX**

| Ex. No. | Description | Pages |
|---|---|---|
| 1 | Loss Payee Page | 1 |
| 2 | Notice of Default and Intent to Accelerate | 1 |
| 3 | Trustee's Deed Upon Sale | 4 |
| 4 | Bank's Response to Subpoena | 8 |
| 5 | Bankruptcy Docket Excerpt | 2 |
| 6 | Foreclosure Matter Filing | 8 |
| 7 | Proposed First Amended Complaint | 7 |

Robertson, Johnson, Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

# EXHIBIT "8"

Rory T. Kay (NSBN 12416)
Adrienne Brantley-Lomeli (NSBN 14486)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
abrantley@mcdonaldcarano.com

David E. Walker (Admitted Pro Hac Vice)
Douglas W. Walker (Admitted Pro Hac Vice)
Kassandra Altantulkhuur (Admitted Pro Hac Vice)
WALKER WILCOX MATOUSEK, LLP
One North Franklin, Suite 3200
Chicago, IL 60606
Tel: (312) 244-6700
Fax: (312) 244-6800
dwalker@walkerwilcox.com
dougwalker@walkerwilcox.com
kalt@walkerwilcox.com

*Attorneys for Defendant General Security Indemnity Company of Arizona*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARM HOSPITALITY LLC D/B/A WINGATE BY WYNDHAM ELKO, and WEST TOWN BANK & TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA,<br><br>Defendant. | Case No. 2:23-cv-00228-RFB-BNW<br><br>**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA'S MOTION TO ENFORCE SETTLEMENT** |

NOW COMES Defendant General Security Indemnity Company of Arizona ("GSINDA"), by and through its counsel, Walker Wilcox Matousek, LLP and McDonald Carano LLP, and moves to enforce the settlement that the parties reached in this matter. In support of its motion, GSINDA states as follows:

1. On February 13, 2023, Plaintiff Charm Hospitality, LLC ("Charm Hospitality") filed its original complaint in this matter.

2. On October 20, 2023, Charm Hospitality filed a motion for leave to file an amended complaint seeking to add West Town Bank & Trust ("West Town Bank," together with Charm Hospitality "Plaintiffs") as a plaintiff.

3. On May 23, 2024, the Court granted Charm Hospitality's motion.

4. On May 28, 2024, Charm Hospitality filed its first amended complaint, with Charm Hospitality's counsel appearing as counsel of record for West Town Bank as well as Charm Hospitality.

5. On October 22, 2024, the parties engaged in mediation in Las Vegas with the Honorable Judge Jackie Glass (Ret'd) of Advanced Resolution Management, Las Vegas.

6. The parties did not reach a resolution at the October 22 mediation but thereafter scheduled a second mediation session for December 17, 2024, which resulted in a settlement in principle.

7. At the end of the meditation session, the parties executed a term sheet memorializing the material terms of the agreement subject only to the provision of a draft settlement agreement and release to be drafted by undersigned defense counsel and then agreed by the parties.[1] At all times during the two mediation sessions, both Plaintiffs were represented by their counsel of record with authority to act for both, with the Terms Sheet stating as follows:

> This case having come on this date for voluntary mediation, it is hereby stipulated by and between the parties through their respective counsel or representative that the above referenced case has been settled according to the terms memorialized herein. The settlement document is intended by the parties to be binding and enforceable in state and federal court by motion pursuant to the inherent power of the court to enforce settlement agreements and in accordance with the applicable state and federal rules of procedure and evidence.

8. The terms agreed upon at the mediation were all the material terms required for settlement of the dispute, with no terms necessary for an enforceable settlement left for resolution. *See May v. Anderson*, 119 P.3d 1254 (Nev. 2005).

[1] The terms of the settlement agreement are confidential. If the Court orders GSINDA to produce a copy of the signed term sheet, GSINDA will do so under seal.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

9. On December 19, 2024, counsel for GSINDA sent counsel for Plaintiffs a draft settlement agreement and release, and the parties made certain mutually agreeable revisions to the document.

10. On January 14, 2025, Plaintiffs' counsel contacted counsel for GSINDA and informed him that only one edit needed to be made to the draft settlement agreement. That change was agreed and made.

11. On January 16, 2025, counsel for GSINDA executed the settlement agreement on behalf of GSINDA and sent Plaintiff's counsel a copy of the executed document that included the one requested edit.

12. On January 22, 2025, West Town Bank executed the settlement agreement.

13. Plaintiffs' counsel has informed GSINDA's counsel that Charm Hospitality has refused to sign the agreed version of the settlement agreement due to what appears to be a dispute as between the two Plaintiffs on how the settlement funds will be allocated.

14. On January 23, 2025 GSINDA's counsel received a voicemail message from a lawyer (Attorney A.J. Kung) purporting to represent Plaintiff Charm Hospitality advising that she would be sending a revised version of the settlement agreement that involved changes as to how the settlement funds were to be paid.

15. As of the date of filing of this motion, Plaintiffs' original counsel remains of record as representing Charm Hospitality in this lawsuit. Attorney Kung has not filed an appearance on behalf of Charm Hospitality.

16. To date, Charm Hospitality has not executed the settlement agreement agreed upon by counsel of record for all parties in this matter, and on information and belief refuses to do so.

17. Indeed, on the afternoon of January 27, Attorney Kung emailed a copy of the settlement agreement with edits to the provision of the settlement agreement dealing with the manner in which payment was to be made to Plaintiffs, which would require GSINDA to move forward with interpleading the settlement funds into Court. Interpleader was not a term of settlement that was proposed prior to execution of the settlement agreement.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

18. Federal courts have inherent authority to enforce settlement agreements in pending cases. *See*, *e.g., Mitchell v. Nevada Dept' of Corrections*, Case No. 16-cv-00037, 2019 WL 247226 at *1 (D. Nev. Jan. 17, 2019), *In Re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958 (9th Cir. 1994).

19. The interpretation of a settlement agreement is governed by principles of state contract law. In Nevada, basic contract principles require an offer and acceptance, meeting of the minds, and consideration. *May*, 119 P.3d at 1257. "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012).

20. The Nevada Supreme Court has held that a settlement contract can be formed when the parties have agreed to its material terms, even if a formal settlement agreement has not yet been signed. *May*, 119 P.3d at 1257.

21. Here, it is undisputed that during the December 17 mediation, GSINDA on the one hand, and both Plaintiffs on the other, engaged in settlement negotiations by exchanging offers and counteroffers until there was an acceptance of the last offer, representing a meeting of the minds between the parties. The material terms of the settlement agreement were agreed to and memorialized in a term sheet and signed by counsel for all parties on December 18, 2024, under the guidance of the mediator, the Honorable Judge Jackie Glass (Ret'd).

22. Notwithstanding the agreement, Charm Hospitality has now refused to execute the settlement agreement allegedly due to a dispute with West Town Bank regarding the settlement payment.

23. Therefore, GSINDA has been forced to bring this motion to enforce and incurred attorneys' fees associated with discussions regarding Charm Hospitality's position as well as, now, this motion.

24. In similar cases, this Court has previously awarded reasonable attorneys' fees to the moving party.

25. A court has inherent power to sanction a party if it acts in "willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" as well as for "willful[ ] abuse [of the] judicial processes." *Gomez v. Vernon*,

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

255 F.3d 1118, 1133–34 (9th Cir. 2001) (internal quotation marks and citation omitted). The Ninth Circuit has affirmed the imposition of sanctions under a court's inherent authority when a party attempts to renege on a valid settlement agreement. *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1140-41 (9th Cir. 2002) (affirming sanctions when the terms of a settlement agreement were placed on the record and the party attempting to withdraw had refused to sign the agreement.). *See also Dhaliwal v. MHM Solutions, LLC*, Case No. 21-cv-00568, 2022 WL 2315553 (D. Nev. June 28, 2022) (adopting in full Magistrate Judge Weksler's Report and Recommendation, which recommended granting moving party its request for reasonable attorneys' fees associated with bringing motion to enforce settlement).

WHEREFORE, GSINDA respectfully requests that this Court grant its motion to enforce the settlement, award its reasonable attorneys' fees, and for such other relief as the Court deems just.

DATED this 28th day of January, 2025.

McDONALD CARANO LLP

By: */s/ Rory T. Kay*
Rory T. Kay (NSBN 12416)
Adrienne Brantley-Lomeli (NSBN 14486)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
abrantley@mcdonaldcarano.com

David E. Walker (Admitted Pro Hac Vice)
Douglas W. Walker (Admitted Pro Hac Vice)
Kassandra Altantulkhuur (Admitted Pro Hac Vice)
WALKER WILCOX MATOUSEK, LLP
One North Franklin, Suite 3200
Chicago, IL 60606
Tel: (312) 244-6700
Fax: (312) 244-6800
dwalker@walkerwilcox.com
dougwalker@walkerwilcox.com
kalt@walkerwilcox.com

*Attorneys for Defendant General Security Indemnity Company of Arizona*

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 28th day of January, 2025, a true and correct copy of **GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA'S MOTION TO ENFORCE SETTLEMENT** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By: */s/ Leah Jennings*
An employee of McDonald Carano LLP

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

# EXHIBIT "9"

Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
February 17, 2022

Michael R. Brooks, Esq. (SBN 7287)
HUTCHISON & STEFFEN, PLLC
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
Phone: (702) 385-2500
Fax: (702) 385-2086
Email: mbrooks@hutchlegal.com

Attorneys for Creditor
West Town Bank & Trust

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In Re: CHARM HOSPITALITY, LLC,<br><br>Debtor. | Case No.: 20-50880-NMC<br><br>CHAPTER 11<br><br>**ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>(Property: 3019 Idaho Street, Elko, Nevada) |

Based upon the Movant's Motion for Relief from Stay [ECF 261] on shortened time, and good cause appearing therefore,

IT IS HEREBY ORDERED that Movant's Motion for Relief from the automatic stay is GRANTED to allow Movant to immediately proceed with the pursuit of state law remedies, including

foreclosure by judicial or nonjudicial means except that Movant may not seek the appointment of a receiver during the pendency of this bankruptcy.

IT IS FURTHER ORDERED THAT the provision of FRBP 4001(a)(3) shall be waived the stay will terminate immediately upon entry of this order.

**RESPECTFULLY SUBMITTED:**

HUTCHISON & STEFFEN, PLLC

***/s/ Michael R. Brooks***

By: ______________________________

Michael R. Brooks, Esq.

Attorneys for Creditor
West Town Bank & Trust

**LR 9021 Certification**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling that (check one):

______ The Court has waived the requirement of approval under LR 9021(b)(1).

______ No party appeared at the hearing or filed an objection to the motion.

__X__ I have delivered a copy of this proposed order to all counsel appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Approved/Disapproved (circle)

By: Brandy Brown, Kung & Brown, Counsel for Debtor

______ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

***/s/ Michael R. Brooks***

______________________________

Michael R. Brooks, Esq.
Attorney for Creditor

**CERTIFICATE OF SERVICE**

Pursuant to FED. R. CIV. P. 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC and that on this 10th day of February, I caused the above and foregoing document entitled ***CREDITOR WEST TOWN BANK & TRUST'S ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY*** to be served by Personally transmitting a copy of same via the Court's CM/ECF Internet system to their respective registered email site.

/s/ ***Bobbie Benitez***
An employee of Hutchison & Steffen, PLLC

Michael R. Brooks, Esq. (SBN 7287)
HUTCHISON & STEFFEN, PLLC
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
Phone: (702) 385-2500
Fax: (702) 385-2086
Email: mbrooks@hutchlegal.com

Attorneys for Creditor
West Town Bank & Trust

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA (RENO)

| | |
|---|---|
| In Re: CHARM HOSPITALITY, LLC,<br><br>Debtor. | Case No.: 20-50880-btb<br><br>CHAPTER 11<br><br>**DECLARATION OF MICHAEL R. BROOKS REGARDING DISPUTE OVER LANGUAGE OF THE PROPOSED ORDER TERMINATING STAY**<br><br>Date of Hearing: February 8, 2022<br>Time of Hearing: 9:30 a.m. |

I, Michael R. Brooks, declare as follows:

1) I am the attorney for movant and secured creditor, West Town Bank & Trust and licensed to practice before this Court and all of the Courts of Nevada.

2) I have personal knowledge of the facts set forth herein and if called upon to testify thereto, I could and would do so truthfully and competently.

3) West Town filed a motion for relief that was heard on shortened time on February 8, 2022. In its moving papers, West Town specifically requested a waiver of the 14-day stay imposed by FRBP 4001.

4) The Debtor filed an opposition which objected to the relief to allow for the appointment of a receiver of the Property. However, the Debtor did not oppose the other requested relief. In particular, the Debtor's Opposition did not address the request for a waiver of the stay under FRBP 4001.

5) The undersigned counsel prepared an order for relief following the hearing on this matter. The drafted order is filed concurrently herewith.

6) The undersigned counsel included language concerning the waiver of the stay imposed by FRBP 4001 believing that it was granted.

7) The parties could not agree on the language concern the waiver of the FRBP 4001 stay language.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of February, 2022 at Kearney, Missouri.

Michael R. Brooks

# EXHIBIT "10"

NVB 1017−1 (Rev. 8/15)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

IN RE:

CHARM HOSPITALITY, LLC

Debtor(s)

BK−20−50880−nmc
CHAPTER 11

NOTICE OF DISMISSAL;
NOTICE THAT ALL PENDING HEARINGS ARE VACATED

On 3/17/22, the Bankruptcy Court for the District of Nevada entered an order dismissing this bankruptcy case. As a result, all pending hearings in the case, except any pending hearings regarding Appeals and Motions to Reconsider, are hereby vacated and will be taken off calendar without further notice. This notice does not affect the status of any adversary proceedings or any motions or matters that are pending in such adversary proceedings.

Dated: 3/17/22

Mary A. Schott
Clerk of Court

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Charm Hospitality LLC dba Wingate by Wyndham Elko

**DEFENDANTS**
Nohayia Javed, Esq.; and West Town Bank & Trust

**(b)** County of Residence of First Listed Plaintiff: Elko
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: ______
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kung & Brown
1020 Garces Avenue

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE Richard F. Boulware, II DOCKET NUMBER 2:23-cv-0228-RFB-BNW

DATE: 2/10/2025

SIGNATURE OF ATTORNEY OF RECORD: /s/ A.J. Kung, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

A.J. Kung, Esq.
Nevada Bar No. 7052
**KUNG & BROWN**
1020 Garces Ave.
Las Vegas, NV 89101
(702) 382-0883 Telephone
(702) 382-2720 Facsimile
ajkung@ajkunglaw.com
*Counsel for Plaintiff*
*Charm Hospitality LLC dba*
*Wingate by Wyndham Elko*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| CHARM HOSPITALITY LLC D/B/A WINGATE BY WYNDHAM ELKO,<br><br>Plaintiffs,<br><br>v.<br><br>NOHAYIA JAVED, ESQ.; and WEST TOWN BANK & TRUST DOES I-X; ROE BUSINESS ENTITIES XI-XX,<br><br>Defendant. | CASE NO.:<br><br>**SUMMONS IN A CIVIL ACTION** |

TO: NOHAYIA JAVED, ESQ.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) – you must serve on the Plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

A.J. Kung, Esq.
Kung & Brown
1020 Garces Avenue
Las Vegas, Nevada 89110

/ / /

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: ____________________ ________________________________________

*Signature of Clerk or Deputy Clerk*

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

A.J. Kung, Esq.
Nevada Bar No. 7052
**KUNG & BROWN**
1020 Garces Ave.
Las Vegas, NV 89101
(702) 382-0883 Telephone
(702) 382-2720 Facsimile
ajkung@ajkunglaw.com
*Counsel for Plaintiff*
*Charm Hospitality LLC dba*
*Wingate by Wyndham Elko*

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

** **

| | |
|---|---|
| CHARM HOSPITALITY LLC D/B/A WINGATE BY WYNDHAM ELKO,<br><br>Plaintiffs,<br><br>v.<br><br>NOHAYIA JAVED, ESQ.; and WEST TOWN BANK & TRUST DOES I-X; ROE BUSINESS ENTITIES XI-XX,<br><br>Defendant. | CASE NO.:<br><br>**SUMMONS IN A CIVIL ACTION** |

TO: WEST TOWN BANK & TRUST

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) – you must serve on the Plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

A.J. Kung, Esq.
Kung & Brown
1020 Garces Avenue
Las Vegas, Nevada 89110

/ / /

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: ____________________ ________________________________________
*Signature of Clerk or Deputy Clerk*

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

# EXHIBIT 5

Certificate of Interested Parties (Case No. 2:25-cv-00282, ECF #6)

A.J. Kung, Esq.
Nevada Bar No. 7052
**KUNG & BROWN**
1020 Garces Ave.
Las Vegas, NV 89101
(702) 382-0883 Telephone
(702) 382-2720 Facsimile
ajkung@ajkunglaw.com
*Counsel for Plaintiff*
*Charm Hospitality LLC dba*
*Wingate by Wyndham Elko*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| CHARM HOSPITALITY LLC D/B/A WINGATE BY WYNDHAM ELKO,<br><br>Plaintiff,<br><br>v.<br><br>NOHAYIA JAVED, ESQ.; and WEST TOWN BANK & TRUST DOES I-X; ROE BUSINESS ENTITIES XI-XX,<br><br>Defendants. | CASE NO.: 2:25-cv-00282-APG-BNW<br><br>**CERTIFICATE OF INTERESTED PARTIES** |

Plaintiff, Charm Hospitality LLC dba Wingate by Wyndham Elko ("Charm"), by and through counsel, the Law Office of Kung & Brown, hereby file its Certificate of Interested Parties pursuant to Federal Rules of Civil Procedure 7.1 and Local Rule 7.1-1.

The undersigned counsel of record for Charm certifies that it is solely owned by Param Kaur, individually, and that there is no parent company or any publicly held corporation owning 10% or more of Charm's stock.

The undersigned counsel of record for Charm further certifies that the following may have a direct pecuniary interest in the outcome of this case:

i. Param Kaur is the sole owner of Charm Hospitality, LLC and is a citizen of India;

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

ii. Nohayia Javed, Esq. is a citizen of Texas who is alleged to have committed legal malpractice and who has a pecuniary interest in the outcome of this case because she is a named defendant herein and because she has an asserted attorney's lien against insurance proceeds in dispute in Nevada District Court Case No. 2:23-cv-00228-RFB-BNW, which proceeds are also in dispute in this case;

iii. Robertson Law Firm, Inc. dba Robertson, Johnson, Miller & Willamson is a Nevada professional corporation, with its principal place of business in Nevada, is a citizen of Nevada, and has a pecuniary interest in this case because it has asserted an attorney's lien against insurance proceeds in dispute in Nevada District Court Case No. 2:23-cv-00228-RFB-BNW, which proceeds are also in dispute in this case.

iv. West Town Bank & Trust is a citizen of Illinois, where it was incorporated, and of North Carolina, its primary place of business. West Town Bank & Trust has a pecuniary interest in this case because it is a named defendant herein and because it has asserted an attorney's lien with respect to the insurance proceeds in dispute in Nevada District Court Case No. 2:23-cv-00228-RFB-BNW, which proceeds are also in dispute in this case.

These representations are made to enable judges of the court to evaluate possible disqualification or recusal.

Dated this 19th day of February 2025.

**KUNG & BROWN**

*<u>/s/ A.J. Kung</u>*
A.J. Kung, Esq.
1020 Garces Avenue
Las Vegas, Nevada 89101
*Counsel for Plaintiff Charm Hospitality LLC dba Wingate by Wyndham Elko*

KUNG & BROWN
1020 Garces Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of February 2025, a true and correct copy of the foregoing CERTIFICATE OF INTERESTED PARTIES by method indicated below:

☐ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Las Vegas, Nevada addressed as set forth below.

☒ **BY EMAIL:** by emailing a PDF of the document listed above to the email addresses of the individual(s) listed below.

Nohayia Javed, Esq.
attorney@javedlawfirm.com

Nathaniel Rulis, Esq.
n.rulis@kempjones.com
*Counsel for West Town Bank & Trust*

Briana N. Collings, Esq.
Briana@nvlawyers.com

☐ **BY PERSONAL DELIVERY:** by causing personal delivery by __________, a messenger service with which this firm maintains an account, of the document(s) listed above to the person(s) at the address(es) set forth below.

☒ **BY ELECTRONIC SUBMISSION:** submitted to the above-entitled Court for electronic filing and service upon the Court's Service List for the above-referenced case and addressed to the following:

*/s/ Kathryn Thomas*
An employee of Kung & Brown